## WARE et al. v. WELCH et al.

### (Court of Civil Appeals of Texas. El Paso. June 13, 1912.)

1. INJUNCTION (§ 1*)—NATURE OF WRIT—DISTINGUISHED FROM "MANDAMUS."

An injunction is a preventive writ which restrains motion and enforces inaction, while mandamus is a remedial writ which compels action and coerces the performance of a proper existing duty, and hence a writ whereby persons were restrained from intruding themselves on the county committee of the Democratic party, and members of the committee were restrained from attempting to include the intruders as members, is an injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 435; Dec. Dig. § 1,*

For other definitions, see Words and Phrases, vol. 4, pp. 3610–3612; vol. 8, p. 7688; vol. 5, pp. 4323–4330; vol. 8, pp. 7714–7715.]

2. APPEAL AND ERROR (§ 71*)—DECISIONS REVIEWABLE.

An interlocutory order granting a temporary injunction is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 386–401; Dec. Dig. § 71.*]

3. INJUNCTION (§ 136*)—SUBJECTS OF PROTECTION—PROTECTION OF OFFICERS.

While title to an office cannot be tried by injunction, an injunction will lie even to protect a de facto officer from intruders, so that a temporary injunction is properly granted to protect members of the executive committee of the Democratic party from disturbance by intruders who have no right or title to the office, and to restrain members from attempting to include the intruders; the proceeding not being one to try title to the office.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

4. INJUNCTION (§ 118*)—PETITION—REQUISITES.

While the averments of a petition for an injunction will be taken most strongly against the pleader, it is sufficient if the petition state all the essential elements entitling the petitioner to relief, and negative all reasonable inferences from which it might be deduced that he was not entitled to the relief sought.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

5. INJUNCTION (§ 118*)—PETITION—SUFFICIENCY.

A petition for an injunction to restrain certain defendants from intruding themselves into the county committee of the Democratic party and to restrain members of the committee from inducing the intrusion sufficiently negatived the inference that the proceeding was one to try title to the offices where it alleged that the plaintiffs were the duly qualified and elected members, and that the defendants were without color of title and were mere intruders; allegations that defendants are mere intruders necessarily being general.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Henry Welch and others against W. B. Ware and others. From an interlocutory order granting a temporary injunction, defendants appeal. Affirmed.

Stanton & Weeks, F. G. Morris, Moore & Moore, C. W. Marshall, Jones & Jones, and Patterson & Wallace, all of El Paso, for appellants. Turney & Burges, T. A. Falvey, W. M. Coldwell, P. R. Price, and Burges & Burges, all of El Paso, for appellees.

HIGGINS, J. On May 7, 1912, Henry Welch, Robert L. Holliday, Ballard Coldwell, Lew Gilbert, A. G. Duchene, H. O. Dow, Charles Le Baron, W. W. Davis, Francisco Sierra, M. H. Webb, E. B. Jones, and James Connor filed suit in the district court of El Paso county against W. B. Ware, Faustino Armenderez, Gaspar Giron, D. D. Marshall, J. F. Kilbourn, Benito Solis, J. B. Donahue, V. R. Styles, S. J. Freudenthal, R. W. Border, J. W. Webb, J. M. Gonzales, Seth Orndorff, H. B. Elliott, Eugenio Perez, J. S. Dougherty, L. R. Millican, and Jim Capron, alleging that the plaintiffs each and all were duly elected and qualified acting members of the Democratic County Executive Committee of El Paso county, and that defendant Ware was the duly elected and qualified chairman of said committee, and that defendants Armenderez and Giron were members of said committee; that said committee has numerous and important functions and duties to perform between now and July 27, 1912, in relation to the holding of the Democratic primary election, and, to discharge the duties incumbent upon said committee by law, it must hold various meetings, and at such meetings various matters of importance must be submitted to a vote thereof; and that a meeting of the committee had been called by the said Ware at 11 o'clock a. m., May 7, 1912, for the purpose of making up the roll of delegates from the returns of the precinct primaries held in the various election precincts of the county on May 4, 1912, and that, as aforesaid, numerous other meetings of said committee were to be held between that date and the 27th day of July, 1912.

It was further alleged "that defendants have wickedly and unlawfully conspired and confederated together, and each with the other, to prevent plaintiffs and each of them from participating in said meeting of said executive committee, as aforesaid, and in all future meetings of said committee; that said defendants D. D. Marshall, J. F. Kilbourn, Benito Solis, J. B. Donahue, V. R. Styles, S. J. Freudenthal, R. W. Border, J. W. Webb, J. M. Gonzales, Seth Orndorff, H. B. Elliott, Eugenio Perez, J. S. Dougherty, L. R. Millican, and Jim Capron, aided, abetted, and encouraged by said other defendants, without any foundation in law or fact, falsely threaten and assert that they are members, and each of them is a member, of said executive committee, and have intruded themselves into the meeting of said committee, and threaten and intend so to do

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

and will so do in all meetings of said committee to be held in the future unless restrained by this court, and aiding and abetting the said unlawful conspiracy; that defendants W. B. Ware, Faustino Armenderez, and Gaspar Giron likewise falsely and maliciously assert that the said defendants D. D. Marshall, J. F. Kilbourn, Benito Solis, J. B. Donahue, V. R. Styles, S. J. Freudenthal, R. W. Border, J. W. Webb, J. M. Webb, J. M. Gonzales, Seth Orndorff, H. B. Elliott, Eugenio Perez, J. S. Dougherty, L. R. Millican, and Jim Capron are members of said committee and encourage and aid them in their unlawful and unwarranted intrusion upon the meeting of said committee and their attempted usurpation of power; that said defendants W. B. Ware, Faustino Armenderez, and Gaspar Giron have threatened and intend to and will continue to aid and abet the other defendants in their unlawful disturbance of the said committee, as aforesaid, unless they are enjoined from so doing by this court; that said defendant W. B. Ware, in his capacity as chairman of said committee aided and abetted by, and aiding and abetting, the other defendants, threatens and intends and will so do unless restrained by this court, and to refuse to permit plaintiffs, or any of them, to vote on any measure or matter upon which, as members of said committee, plaintiffs each and all are allowed to vote, and to prevent plaintiffs from so voting by intimidation and coercion, and, if plaintiffs or any of them attempt to vote, to refuse to count their votes and permit the defendants D. D. Marshall, J. F. Kilbourn, Benito Solis, J. B. Donahue, V. R. Styles, S. J. Freudenthal, R. W. Border, J. W. Webb, J. M. Gonzales, Seth Orndorff, H. B. Elliott, Eugenio Perez, J. S. Dougherty, L. R. Millican, and Jim Capron to unlawfully vote, and as chairman to count their votes, and to permit the committee to be controlled by such illegal votes, to refuse to recognize plaintiffs, or each or any of them, as duly elected members of said committee, to refuse to recognize them when they seek at the proper time, and in the proper manner, to make a motion before said committee, to aid and abet the other defendants in creating disorder and confusion when any of the plaintiffs seek to take part in the meetings of said committee, and thus to render it impossible for plaintiffs to discharge the duties incumbered upon them by law. Plaintiffs and each of them show that they are each and all legally entitled to hold their said respective offices aforesaid and to quietly and peaceably discharge the duties thereof; that, unless said defendants are restrained from the commission of said unlawful and wanton acts aforesaid, the judgment herein vindicating the right and title to the respective offices will be ineffectual. Wherefore, plaintiffs jointly and severally pray that this court forthwith issue an order restraining the defendants D. D. Marshall, J. F. Kilbourn, Benito Solis, J. B. Donahue, V. R. Styles, S. J. Freudenthal, R. W. Border, J. W. Webb, J. M. Gonzales, Seth Orndorff, H. B. Elliott, Eugenio Perez, J. S. Dougherty, L. R. Millican, and Jim Capron from voting or attempting to vote at any meeting of the Democratic Executive Committee of El Paso county, Tex., and restraining them from attempting to participate in the proceedings of said committee, and that your honor issue an order restraining the defendant W. B. Ware from refusing to receive and count the votes of said plaintiffs, and each of them, on any measure coming before said committee upon which the law allows the members of such committee to vote, and the order further command that said W. B. Ware, Faustino Armenderez, and Gaspar Giron cease to interfere with the quiet and peaceable enjoyment of their respective offices by these plaintiffs and each of them. Plaintiffs pray that defendants be cited to appear and answer this petition, and that upon final hearing they and each of them have judgment, establishing their right to their respective offices, enjoining the defendants, and each of them, from interfering with their peaceable possession and enjoyment of said offices, and for costs of suit and such other and further relief, general or special, to which they may be entitled under the premises."

Upon presentation of the foregoing petition to the court, and without notice to the defendants, the court entered its order that the injunction issue, returnable to the September term of court, from which order the defendants have appealed to this court.

[1, 2] At the threshold of this case we are confronted with the contention upon the part of the appellants that the writ awarded and issued was not an injunction, but a peremptory writ of mandamus, and that the court erred in issuing the same, since it is expressly provided by article 1450, Revised Statutes of 1895, that no mandamus shall be granted on an ex parte hearing; but in the view that it is a mandamus we do not concur, and are of the opinion that it is an injunction. An injunction is essentially a preventive remedy, mandamus a remedial one; the former is usually employed to prevent future injury, the latter to redress past grievances. The functions of an injunction are to restrain motion and to enforce inaction; those of a mandamus to set in motion and to compel action. In this sense an injunction may be regarded as a conservative remedy, mandamus as an active one; the former preserves matters in statu quo, while the very object of the latter is to change the status of affairs and to substitute action for inactivity. The one is therefore a positive or remedial process, the other a negative or preventive one. Another important and characteristic feature of a writ of mandamus, and one

which distinguishes it from many other remedial writs, is that it is used merely to compel action and to coerce the performance of a pre-existing duty. High on Extraordinary Legal Remedies (3d Ed.) §§ 6, 7. Tested by these distinguishing and characteristic features of the two writs, there is no difficulty in reaching the conclusion that the writ granted in this case was an injunction, and not a mandamus. It may be said, however, that, should we have adopted the view that mandamus was the true nature of the writ granted, we would then find ourselves without jurisdiction to pass upon any of the questions involved in this appeal, because the judgment was interlocutory in its nature, and the law does not authorize an appeal from an interlocutory order granting a mandamus, and we would be under the necessity of dismissing the appeal. Being of the opinion, however, that the order granted was a temporary writ of injunction, from the entry of which by special statute appellant had a right to appeal, we come now to a consideration of appellants' remaining assignments of error.

[3] Under the third assignment it is contended that, if it was a writ of injunction, the court erred in granting the same because the question at issue was a controversy over the title to the offices of executive committeemen, and courts of equity have no jurisdiction, or rather authority, to try the title to office by injunction proceeding, or to grant injunctions in such cases; the proper remedy being at law by proceedings in the nature of quo warranto. This broad proposition of law seems to be well settled by the text-writers and decisions, but in this state, and in many other jurisdictions, the right and duty of courts of equity to interfere by injunction to maintain the status quo of de facto officers pending final judgment, and to prevent unwarranted or unlawful interference by an intruder, who, by force or otherwise, is seeking to dispossess such officer, is equally well recognized. High on Inj. (2d Ed.) § 1315, says: "While, as is thus shown, courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers de facto by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants. Thus equity will refuse to enjoin officers de facto from exercising the duties and functions pertaining to their office, pending a litigation in the nature of quo warranto to determine their title; such refusal being based upon a recognition of that element of public interest which requires that some one should continue to exercise the duties of a public office, pending a litigation as to its title. Upon the other hand, the actual in-

cumbents of an office may be protected, pending a contest as to their title, from interference with their possession, and with the exercise of their functions. Thus the officers de facto of a school district may restrain persons claiming to be officers de jure, but who are not in possession, from taking possession of the schoolhouse, and from interfering with plaintiffs in their employment of teachers and in their management of school affairs, and this notwithstanding the fact that the defendants thus enjoined claim to be the legally-elected officers, and have instituted proceedings in quo warranto to establish their title. And the granting of an injunction in such case in no manner determines the questions of title involved, but merely goes to the protection of the present incumbents against the interference of claimants out of possession, and whose title is not yet established."

Mr. Beach on Injunction, § 1380, says: "An injunction may be granted to protect the possession of officers de facto against the interference of claimants whose title is disputed, until the latter shall establish their title by the judicial proceeding provided by law. Injunction to prevent interference with the possession of a de facto officer lies at the instance of a member of a board where it appears that the adverse claimant may, otherwise than by a concurrent action with the other members of the board, induct himself extrajudicially in part into office, and to some extent oust the incumbent. But claims to an office under conflicting commissions will not be considered and passed upon in an injunction proceeding, the sole object of which is to maintain the incumbent in possession provisionally until the pretensions of the adverse claimant, who threatens to induct himself into office, and thus oust the de facto officer without legal intervention, are judicially determined." See, also, Poyntz v. Shackelford, 107 Ky. 546, 54 S. W. 855; Guillotte v. Poincy, 41 La. Ann. 333, 6 South. 507, 5 L. R. A. 403; Caruthers v. Harnett, 67 Tex. 127, 2 S. W. 523.

It is not necessary, however, for us to refer to the text-book writers upon this question or to the decisions of courts of other jurisdictions, as the question is not new in this state and has been directly passed upon by the Court of Civil Appeals of the Fourth supreme judicial district in the case of Callaghan v. Tobin, 40 Tex. Civ. App. 441, 90 S. W. 328, in which a writ of error was refused by the Supreme Court, and it was distinctly held that, while the title to an office cannot be tried through the medium of an injunction, yet such remedy by injunction can be invoked to protect the possession even of officers de facto against the acts of intruders upon such possession. In view of the peculiar directness with which this case bears upon this question, we quote at length from the opinion:

"Through the medium of the first assignment of error, the appellants submit that the court erred in overruling their general demurrer to appellee's original petition; the first proposition of law thereunder being that, 'where a claim of office is asserted, injunction is not the proper remedy to secure or retain possession of the office and the custody and control of the property incident thereto.' The same contention is made in the second and fifth assignments of error, and the three will be considered together. In this suit the petition alleges the case of an officer duly appointed, and in lawful possession of the office, and property appertaining thereto, to which he was appointed by lawful authority, and the threatened interference with him in such possession, and his removal therefrom by persons alleged to have no legal authority therefor and having no title to the office. The suit does not purport to be one between claimants for the office, each claiming to have the legal title thereto, but is a proceeding to enjoin persons making no claim to the office, but who are contemplating and intending to dispossess the party seeking the injunction. This distinction must be kept in view in the consideration of the questions submitted. The title to an office cannot be tried through the medium of an injunction, but the remedy by an injunction can be invoked to protect the possession even of officers de facto against the acts of intruders on such possession. Beach on Inj. § 1380; 2 High on Inj. § 1315. The foregoing principle is laid down, not only in text-books, but is clearly set forth in numerous decisions of courts of last resort. In the case of Guillotte v. Poincy, 41 La. Ann. 333, 6 South. 507, 5 L. R. A. 403, the plaintiff was a member of the board of flour inspectors of the city of New Orleans, and alleged that he was entitled to hold the office until his successor was duly appointed and qualified, that the board was about to admit the defendant, who was claiming the office under the pretended authority of an invalid appointment made by the Governor of the state, as a member, and that the board was about to grant him a place on the board, and plaintiff prayed that he be protected in his possession of the office. The objection was made by the defendant that the petition disclosed no cause of action, in this: That the title to public office cannot be tested by injunction. It was held that the proceeding was not one to try title to an office. The Supreme Court said: 'But, from the statement given above, it is quite apparent that this action does not involve any decision upon the question of the disputed title to the office. Plaintiff says simply: 'I am the actual incumbent in possession of the office to which I claim to be legally entitled. Defendant claiming under a title, the validity of which I dispute, is seeking to oust me extrajudicially, in which ef-

fort he will have the aid of my fellow members on the board; and I ask judicial aid to protect my incumbency and possession until defendant shall in due course of judicial proceeding establish his right and title.' Such an action falls within a well-recognized branch of relief by injunction. * * * This doctrine is in the interest of social peace and order, and conforms to the object and policy of the law in all remedial provisions for the settlement of disputed rights, which always respect the status quo until the controversy shall be settled in orderly course of judicial procedure. In the case of Wheeler v. Board of Fire Com'rs, 46 La. Ann. 731, 15 South. 179, the Supreme Court of Louisiana reaffirms the doctrine of the case hereinbefore cited. In that case the plaintiff sought and obtained an injunction restraining a body, that had no authority to do so, from removing him from office and putting some one else in his stead. After stating the facts, the court said: 'We are of the opinion that the plaintiff was justified in asking, and the court warranted in granting, the injunction which issued in this case.' See, also, Poyntz v. Shackelford, 107 Ky. 546, 54 S. W. 855. In the case of Caruthers v. Harnett, 67 Tex. 127, 2 S. W. 523, the same position was taken by the Supreme Court of Texas, and in the case of Ehlinger v. Rankin, 9 Tex. Civ. App. 424, 29 S. W. 240, it was held, by the Court of Civil Appeals of the Third district, that injunction will lie at the suit of a county clerk to restrain a person from usurping his office. A review of a number of authorities supports the conclusion that a court of equity will interpose by injunction to restrain interference with the possession of an office by any man or set of men acting, or proposing to act, without lawful authority. Courts of equity will not interfere to protect a person from removal from office by a man or body of men to whom the power to remove is given by law, but, if no such power is given by law, a court of equity will interfere to protect the incumbent in the possession of office held by him. In the case of Riggins v. Thompson, 30 Tex. Civ. App. 242, 70 S. W. 578, relied on by appellants, Riggins, the mayor of Waco, sought to restrain the city council from proceeding with an impeachment trial, and it was held that he had an adequate remedy at law, and injunction would not lie. The council had legal authority to impeach the mayor, and were not intruders or usurpers in any sense of the words. Riggins v. Richards, 97 Tex. 229, 77 S. W. 946. The allegations in the petition now before this court represent that the power of appointment and removal of the chief of the fire department was conferred by the charter upon the commissioners and not upon the mayor and aldermen. If, upon no other ground, appellee was in position to ask for an injunction to protect the property

intrusted to his possession by the city of San Antonio, as clearly appeared from the case of Caruthers v. Harnett, hereinbefore cited, where it was said: 'There can be no doubt that district court has power to issue an injunction to restrain the illegal seizure or use of the books and papers pertaining to any public office; and it would seem, not only the right, but also the duty of any public officer intrusted with the records, books, and papers of his office, affecting his own rights, as well as the public welfare, to protect them from an illegal seizure or use, and to do this, if necessary, he may ask the interposition of a court of equity." Appellee alleged that he was in possession of the records, books, papers, and property of the fire department, and that they were about to be illegally seized and used by appellants. There was no adequate remedy at law by which such illegal seizure of the property of the city could be prevented, and appellee was entitled to the interposition of a court of equity. * * *

"The title to the office of chief of fire department cannot be adjudicated in this case, and it follows that the third assignment of error which complains of the overruling of the second special exception to the petition cannot be sustained. The proposition under that assignment is that the constitutional term of office is two years, and that a party holding an office beyond that term cannot maintain suit by injunction to perpetuate himself in said office or restrain the proper authorities from appointing his successor. That proposition may be an absolutely correct one, but the original petition does not disclose any such state of case. On the other hand, it appears from the allegations that an officer who had been duly and legally appointed, and had been serving in the office for over two years, and whose successor had not been appointed, was about to be ousted from the office and the property of the city taken possession of by a body of men, who, under the provisions of the charter, had no authority to appoint his successor or to take possession of the property and papers appertaining to the office. Appellee showed by his pleading that he was a de jure officer, and, 'while courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers de facto by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants.' 2 High, Inj. § 1315. * * *

"This court is amply sustained in the proposition that a de facto officer can restrain the usurper or intruder from unlawful interference with his possession of the office and the papers and property pertaining thereto. In addition to the authorities cited in the original opinion, the following are cited: Reemelin v. Mosby, 47 Ohio, 570, 26 N. E. 717; School Dist. v. Weise, 77 Minn. 167, 79 N. W. 668; Stenglein v. Beach, 128 Mich. 440, 87 N. W. 449. In the case of Reemelin v. Mosby, the court said: 'An injunction may be properly allowed, however, where parties are at issue concerning their legal rights, and it is necessary to preserve their rights in statu quo until the determination of the controversy. And we entertain no doubt of the correctness of the rule established by the cases referred to by counsel for the motion, which is that the remedy by injunction may be employed by the incumbent of a public office to protect his possession against the interference of an adverse claimant whose title is in dispute, until the latter shall establish his title at law.' In the case of Stenglein v. Beach, above cited, the Supreme Court of Michigan, after reviewing a former decision by the same court and distinguishing it, said: 'But it does not necessarily follow that the de facto officer, in possession of the office, may not be entitled to an injunction to restrain a claimant from interfering with his possession of the office until he shall entitle himself to do so by proper legal proceedings. The authorities elsewhere seem to fully sustain this right. We think, therefore, that it was within the power of the respondent to issue the writ of injunction until the defendants in the chancery case should, by resort to legal proceedings, establish their right to the office.' This doctrine is too well established to require further discussion. If there are expressions in the Riggins-Thompson Case that may be construed as taking a contrary position, they were not demanded by the facts of that case. Riggins was the incumbent of an office who was about to be tried in a legal manner by a body legally authorized to try him, and, if found guilty, to remove him from office, and all that was called for in the case was a decision that he could not restrain a lawfully constituted court from performing the duties devolved upon it by law. In this case the plaintiff was not about to be tried by a lawful body, but he was about to be removed by a body which, under the law, had no right or authority to remove him. He was asking protection from intruders who had no authority to interfere with him in possession of the office. That the court in the Riggins Case did not intend to hold that the officer in possession of an office cannot enjoin a usurper from interfering with him is evidenced by an opinion by the same court, delivered through the same judge, in which it was held that injunction will lie at the suit of a county clerk to restrain a person from usurping his office. Ehlinger v. Rankin, 9 Tex. Civ. App. 424, 29 S. W. 240.

"This suit was instituted to restrain appellants when they entered into their respective offices, which was the same day on which the civil service commission would enter into the active discharge of their duties,

from interfering with appellee. The suit was not premature, but was to prevent an avowed attempt to proceed to remove the applicant for the writ of injunction from an office of which he was the de facto incumbent. At the time that attempt was to be made, the charter of San Antonio containing section 34a was in full force and effect, and, when the injunction was made final, appellee was the legally appointed chief of the fire department by the legally appointed civil service commissioners. While it was only necessary to show that appellee was a de facto officer, the evidence disclosed the fact of a legal appointment which made him an officer de jure. Appellee sought and obtained an injunction to protect his possession of the office, and, if incidentally it appeared that appellee had title to the office, that fact could not militate against the theory that an officer de facto can invoke the aid of the writ of injunction to protect his possession from being unlawfully disturbed. This is not a trial of the right to the office, and it follows that appellants' attempt to raise the question as to the expiration of appellee's term of office cannot be sustained."

In considering the question now being discussed, it must be borne clearly in mind that the writ issued in this case is based upon the allegations in the petition alone, and, as presented to this court, these allegations alone must be considered, and are to be taken as true, and, as we construe the petition in the case, it shows that plaintiffs were the de jure, as well as de facto, members of the Democratic Executive Committee of El Paso county, with the right, authority, and duty to exercise the duties imposed upon them by law, who are seeking by injunction to protect themselves in the exercise of that right against the unwarranted and unlawful usurpation of their duties and authority by certain of the defendants, aided and abetted by the defendants Ware, Armenderez, and Giron in this unlawful purpose. Had the lower court, instead of issuing the injunction upon an ex parte hearing, set the case down for hearing, upon the coming in of the answer, it might have disclosed that the true question involved was the title of the plaintiffs to the offices claimed by them; or, had the defendants after the issuance of the temporary writ of injunction filed motion to dissolve the same, supported by proper affidavits, it might also have been disclosed in that manner that this was the true question involved. This, however, is not the condition of the record, and no such question is presented to this court.

The correctness of the lower court's action in issuing the writ of injunction herein has so far been considered purely from the standpoint of what is proper under the general principles and usages of equity, but, by article 2989 of the Revised Statutes of 1895, it is made the duty of district judges, either in term time or vacation, to hear and determine all applications, and they may grant writs of injunction (a) where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief, or any part thereof, requires a restraint of some act prejudicial to the applicant; (b) where, pending litigation, it shall be made to appear that a party is doing some act respecting the subject-matter of litigation, or threatens or is about to do some act, or is procuring or suffering the same to be done, in violation of the rights of the applicant, which act would tend to render judgment ineffectual. Undoubtedly this statutory law greatly enlarged the authority and duty of district judges to issue writs of injunction beyond that recognized under the general principles and usages of equity. Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Shaw v. Shaw, 51 Tex. Civ. App. 55, 112 S. W. 124. However, whether or not the injunction was properly issued in this case by virtue of the provisions of the statute just quoted, it is unnecessary to decide, since, for the reasons indicated, we are of the opinion that, upon the case made by the petition, it was warranted under well-recognized grounds of equity jurisdiction. It may be well to state in connection with the issuance of the writ in this case that, so far as the defendants Ware, Armenderez, and Giron are concerned, it is clear that no question of title to office is concerned, they being alleged one to be the chairman and the other two members of said committee; but, if an injunction was properly issued to restrain the other defendants from intruding upon the offices held by the plaintiffs and usurping the duties thereof, then it would necessarily follow that an injunction properly issued against Ware, Armenderez, and Giron restraining them from aiding or assisting them in carrying out this unlawful purpose.

[4] Coming now to a consideration of the only remaining question involved, it is contended that the petition upon its face is insufficient because it does not sufficiently negative the existence of facts so as to show that the question here involved is not that of title to office, and this question, to our minds, has presented much more difficulty than those just discussed. Most of the cases cited by appellants we do not regard as applicable, because they involve the sufficiency of allegations in purely mandamus proceedings. In Gillis v. Rosenheimer, 64 Tex. 246, it is said in an opinion by the Commission of Appeals, adopted by the Supreme Court, that "the petition for an injunction should state all and negative all which is necessary to establish a right." This statement is most broad and comprehensive standing alone, but that it was not intended to have the application that its literal words would imply is manifest by the succeeding sentence, as follows: "The

rule is correctly stated in Harrison v. Crumb, White & W. Civ. Cas. Ct. App. § 992, as follows: 'The rule of pleading that the statements of a party are to be taken most strongly against himself is re-enforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief.'" We think it clear that the rule stated in Harrison v. Crumb there cited is the correct rule, and that it is necessary only for the petition to negative every reasonable inference arising upon the facts stated from which it might be deduced that the applicant might not, under other supposable facts connected with the subject-matter, be entitled to relief by injunction. See Cotulla v. Burswell, 22 Tex. Civ. App. 329, 54 S. W. 614, City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459, and Lane v. Bell, 53 Tex. Civ. App. 213, 115 S. W. 918. In the last case mentioned there was a special exception to the petition because of its failure to negative certain facts, and the court held that the authorities go no further than the rule just stated, and this construction evidently had the approval of the Supreme Court because a writ of error was denied.

[5] The question thus narrows itself down to a consideration of whether or not the petition, as a whole, sufficiently negatived, from the facts stated in the petition, every reasonable inference from which it might be deduced that appellees were not entitled to the relief prayed for under other supposable facts connected with the subject-matter of the litigation.

Appellants contend that, from the facts pleaded in the petition, the inference may be reasonably deduced that the true issue involved was that of title to office, and that there are no sufficient allegations in the petition to negative this inference; that, from the fact alone that certain of the defendants were seeking to perform the functions and discharge the duties of executive committeemen, it should be inferred that they were claiming title by election or by virtue of vacancies having occurred and appointments made. But the petition contains a distinct averment that plaintiffs were the "duly elected and qualified acting members of the Democratic County Executive Committee of El Paso county, Tex.," and in detail alleges their election or subsequent appointment to fill vacancies theretofore having occurred. This certainly negatives sufficiently any inference that the defendants were claiming by election, and it further sufficiently negatives any inference that they had in any way vacated their offices so as to give the defendants title or color of title by subsequent appointment. In the face of this allegation it is not to be reasonably inferred that the defendants were making any such claim of title to the office of executive committeeman, and it would be by election or subsequent appointment only that they could have any claim of title or color of title. While the executive committee, in case of vacancies occurring in the committee, has the power to fill the same by appointment, yet it has no power in case of contest to determine whether or not vacancies have occurred. Honey v. Graham, 39 Tex. 1. And there is nothing in the petition to reasonably suggest that the chairman was seeking to determine the question of vacancies, and that defendants were claiming to act by virtue of appointment to fill such vacancies. The views here expressed are strengthened by the further allegations in the petition that the claims of the defendants are "without any foundation in law or fact," and that they "have intruded themselves into the meeting of said committee and threaten and intend so to do and will so do in all future meetings," and their intrusion into the committee is alleged to be "unlawful and unwarranted," and "an unwarranted usurpation of power."

It is objected that these last-quoted allegations are too general, and that they are conclusions rather than allegations of fact, and it may be conceded that they partake of this nature; but it must be borne in mind, in negativing any claim of right or color of right against one alleged to be an intruder or usurper, the allegations of necessity must be general. A mere intruder or usurper (whom defendants are alleged to be) necessarily has no claim of right or color of right, and in pleading these facts the pleader of necessity must make his averments in general terms.

For the reasons indicated, we are of the opinion that none of the contentions of appellants are well taken, and it is therefore ordered that the judgment be affirmed.

PETICOLAS, C. J. (concurring). It is well to bear in mind in this case that, in deciding the same, this court is limited to the allegations in the plaintiffs' petition, and must assume that they state the truth; therefore the conditions, of which we may know something unofficially and extraneous of the record, are not present before us. We have simply to determine whether the allegations contained in this petition would warrant the court in issuing the writ of injunction. Neither can we pass upon whether or not the trial court should properly have set the matter down for hearing before issuing the injunction, because if the allegations in the petition are true, and if they allege unlawful acts, and if, under the rules of law, these acts are sufficiently alleged, it would be within the trial court's discretion to issue the writ without notice. The allegations in the

petition, being that the plaintiffs were the duly elected officers, are sufficient to show them at least de facto officers. The allegations being further that the defendants unlawfully, etc., were usurping the office are sufficient to show that they are claiming without color of right; and, as it is well established that equity will issue an injunction to preserve the status quo in favor of the de facto officer, it follows that the injunction was rightfully issued.

It has seemed to the writer a very close question whether the allegations sufficiently negatived every reasonable inference arising upon the facts stated from which it might be deduced that the applicants might not, under other supposable facts connected with the subject-matter, be entitled to relief; but the writer has concluded that, taking into consideration that the plaintiffs are alleged to be the duly elected officers, the defendants are alleged to have intruded themselves into the meeting of the committee, and that their intrusion is unlawful and unwarranted, without any foundation in law or fact, that the petition does sufficiently negative such reasonable inference.

It will again be borne in mind that we, under the law, cannot pass upon what were the actual conditions, but must pass upon a theoretical state of affairs as shown by the allegations of the petition, and, thus tested, we think the allegations sufficient.

It is not so stated in the majority opinion, but I understand the affirmance of this case merely amounts to holding that, from the state of facts alleged, assuming the allegations in the petition to be true, there was no reversible error in issuing a temporary writ of injunction, and that such affirmance does not affect any future action in the case, nor prevent the appellants, if they see fit, from moving to dissolve the temporary injunction, and, by presenting the real facts in such motion, obtaining a ruling upon the facts as they are. I also understand them to concur with me in holding that, if upon such motion it should appear. that the contest is really one to try the title to office, the trial court would have no authority to peremptorily determine such title by injunction.

As herein modified, I concur with the views of the majority, and I am authorized to state that my Associates concur in these additional remarks.