**LOVE v. TAYLOR et al. (No. 8099.)**

Court of Civil Appeals of Texas. San Antonio. July 17, 1928.

Rehearing Denied July 19, 1928.

1. Elections ⚖➧120—Court should confine statutory requirements relative to primary elections to letter of law in order to preserve party integrity.

Court should confine various requirements and regulations of primary elections strictly to letter of the law in order to preserve integrity of party and protect it from fraud.

2. Equity ⚖➧65(1)—One seeking equitable relief must come into court with clean hands.

One who seeks relief in court of equity must come into court with clean hands.

3. Elections ⚖➧126(4)—One who took pledge to support Democratic nominee for President and thereafter repudiated obligation and took contrary stand held not entitled to require executive committee to include his name as candidate in Democratic primary (article 3107, as enacted by Acts 40th Leg. 1st Called Sess. c. 67).

One seeking nomination for state office in Democratic primary, who took obligation prescribed by state executive committee to support party's nominee for President, and thereafter repudiated obligation and stated that he would attempt to obstruct election of Democratic nominee for President, *held* not entitled to require state executive committee to place his name on ballot as candidate for Lieutenant Governor, in view of equitable maxim of clean hands and that he who seeks equity must do equity, notwithstanding article 3107, as enacted by Acts 40th Leg. 1st Called Sess. (1927) c. 67.

On Motion for Rehearing.

4. Elections ⚖➧126(4)—Political party's executive committee is not precluded from excluding from primaries persons who repudiate obligation of party loyalty and oppose party's candidates (article 3107, as enacted by Acts 40th Leg. 1st Called Sess. c. 67).

Article 3107, as enacted by Acts 40th Leg. 1st Called Sess. (1927) c. 67, providing that no person shall be denied right to participate in primary because of former political views or affiliations or because of membership or nonmembership in organizations other than political party, does not prevent party's executive committee from excluding from primary persons who claim to be members of party and at the same time repudiate obligation of party loyalty and oppose party nominees.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Proceeding by Thomas B. Love against V. W. Taylor and others. Judgment for defendants, and plaintiff appeals. Affirmed.

F. C. Davis and Marshall Hicks, both of San Antonio, and Sam'l Spears, of San Benito, for appellant.

Seabury, George & Taylor and Graham & Graham, all of Brownsville, for appellees.

FLY, C. J. Appellant seeks to be nominated for Lieutenant Governor, on a ticket to be voted on in the general primary of the Democratic Party, to be held on July 28, 1928. On July 10, 1928, he filed an original petition in which he alleges:

That he "is now a Democrat and is affiliating with the Democratic Party of Texas, and has since he attained his majority affiliated with said party, and he affiliated with said party in the year 1926, by attending and participating in said party's conventions, primary and general elections, held in the state of Texas during the year, and *supported and voted for the nominees thereof at said elections.*" (The italics are made by the writer of this opinion.)

The petition further alleges that in January, 1928, "while so affiliating with said party," appellant applied, in writing, to the state Democratic executive committee to have his name placed on the official ballot for the general primary election to be held in the various counties in the state of Texas on the fourth Saturday in July, 1928, as a candidate for nomination for the office of Lieutenant Governor, that on the second Monday in June, 1928, the state executive committee met and by resolution authorized the state chairman to certify to V. W. Taylor, chairman of the Democratic executive committee of Cameron county, to have the name of appellant, as a candidate for Lieutenant Governor, placed on the ballot before the July primary. The certificate was made and duly received by said county chairman. The certificate with others was placed before the county executive committee, and a subcommittee of five members was appointed, and said subcommittee failed and refused to place the name of appellant on the primary ticket. Appellant prayed that defendants. (appellees herein) V. W. Taylor, H. M. Skelton, A. L. Montgomery, J. I. Coursey, L. D. Moss, and Jas. L. Abney "be restrained from printing said official ballot as now made up, and that they be commanded to place plaintiff's name as such candidate on said official ballot, and that such official ballot be made up and printed with said plaintiff's name as such candidate thereon."

The appellees answered that, in applying for his name to be placed on the ticket as a candidate for a state office, appellant in morals and good conscience declared to the state executive committee that he was affiliating with the National and State Democratic Party, and perpetrated a moral and legal fraud on that committee because "in truth and in fact he was not then affiliating with the Democratic Party, nor has he since then been affiliating with the National and State Democratic Party in this; that he did not

⚖➧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

intend at that time, nor does he intend at this time, to support the presidential nominee of the National Democratic Party." It was alleged that, after he had filed as a candidate for Lieutenant Governor, he went into a precinct convention of the Democratic Party, held in the city of Dallas, to select delegates to a state convention to be held in Beaumont, to select delegates to the National Democratic Convention to be held in Houston, to select candidates of the Democracy for the offices of President and Vice President of the United States, and that appellant in that precinct convention subscribed to the written pledge or obligation prescribed by the state executive committee, to the effect that he would support the nominee for president of the National Democratic Convention. It was charged that when appellant assumed that obligation he did not expect to perform if the National Convention nominated Governor Alfred E. Smith.    It was further charged that he afterwards violated his written obligation, that "he knows nothing of real democracy, and possesses a conscience of such a character that he recognizes no moral obligation resting upon him to support the party or its nominees and its national leader, in time of need; that he is the most outstanding enemy of the Democratic Party, an organizer against its success in the present presidential campaign in the state of Texas; that he is attempting to destroy the integrity of the party by preaching the contemptible doctrine that, when the party has nominated a candidate whose candidacy he does not approve," he will not support him. It was further alleged that appellant is a coworker with the Republican forces who are seeking to elect Herbert Hoover, President of the United States. Appellant did not attempt a reply to the facts pleaded or the charges of fraud made by the appellees.

The cause was heard by the Honorable A. M. Kent, judge of the 103d judicial district, in and for Cameron county, Tex., and it was ordered and decreed that appellant take nothing by his suit, and be denied the relief sought by him.

The findings of fact of the trial judge are sustained by the statement of facts, and are copied, as follows:

"(1) In January, 1928, the plaintiff, Thomas B. Love, signed and duly acknowledged a request to have his name placed upon the official ballot of the Democratic Party, to be used in the general primary election of said party, to be held on the fourth Saturday in July, 1928, as a candidate for the nomination of said party for the office of Lieutenant Governor of the state of Texas, the same being a state office, and filed said request with the state chairman of said party, otherwise known as the chairman of the Democratic state executive committee of Texas, stating in said request his age, occupation, county of residence, and post office address.

"(2) At its regular meeting held on the second Monday in June, 1928, the Democratic state executive committee, by resolution, directed said state chairman to certify to each county chairman the names and county of residence of all candidates as shown by the requests filed with him, including the request so filed by plaintiff; and thereupon the said state chairman duly certified the name and county of residence of plaintiff as such candidate, to each county chairman of the Democratic Party in the state of Texas, and, among others, to V. W. Taylor, county chairman of the Democratic Party for the county of Cameron.

"(3) The Democratic county executive committee of Cameron county met on the third Monday in June, 1928, pursuant to law, and at this meeting the said V. W. Taylor, county chairman, presented the certificates of the chairman of the state and various district executive committees, in accordance with law, including the said certificate of the state chairman, and the said county committee determined by lot the order in which the names of all candidates for all offices requested to be printed on the official ballot, should be printed thereon, including, among others, the name of plaintiff as such candidate for the Democratic nomination to the office of Lieutenant Governor.

"(4) The said V. W. Taylor, county chairman as aforesaid thereupon duly appointed, with the approval of the Democratic county executive committee of Cameron county, Tex., a subcommittee of five members, consisting of A. L. Montgomery, J. I. Coursey, Jas. L. Abney, H. M. Skelton, and L. D. Moss, who, with the said V. W. Taylor as ex officio chairman thereof, constituted the primary committee provided by law, and who are the defendants in this suit. Said subcommittee met on the second Monday in July, 1928, for the purpose of making up the official ballot for such general primary in the county of Cameron, and at said meeting made up such ballot in accordance with the certificates of the state and district chairmen and the requests filed with the county chairman, and placed the names of the candidates for nomination for state, district, county, and precinct offices thereon in the order determined by the county executive committee as aforesaid, except that, on motion made, seconded, and carried by the affirmative votes of four members of said subcommittee, they declined and refused to place on said ballot the names of the following persons: Thomas B. Love as a candidate for Lieutenant Governor of Texas; William E. Hawkins and Mrs. Edith Williams, as candidates for Governor of Texas.

"(5) The refusal aforesaid was made after several days' notice of the intended action had been given by mail to each of the three candidates aforesaid, and after the said subcommittee had heard the plaintiff state the facts as to his party affiliations and his political activities and political intentions, hereinafter found by the court.

"(6) The plaintiff, Thomas B. Love, has been a leading figure in the politics of Texas for more than thirty years past, during which period he has been a representative in the Legislature of Texas, speaker of the Texas House of Representatives, and a state senator, and, in addition, has been, during a large portion of said period, a leading figure in national politics, having been the member of the Democratic National Committee from the state of Texas for a period of

eight years, and having held the office of Assistant Secretary of the Treasury of the United States. During said period he has been a member of the Democratic Party and supported the nominees of that party uniformly, except that in 1924 he voted and used his influence to elect the Republican nominee for Governor. But in January, 1928, when plaintiff signed, acknowledged, and filed his said request, he was again co-operating with the Democratic Party, and a member of that party to all intents and purposes.

"(7) Plaintiff participated in the Democratic precinct convention of the precinct of his residence, held to elect delegates to the Democratic county convention of Dallas county, and also was a delegate to, and participated in, the Democratic county convention of Dallas county, held to elect delegates to the Democratic state convention held at Beaumont, Tex., for the purpose of electing delegates to the Democratic National Convention subsequently held at Houston, Tex., in the year 1928. In the precinct convention aforesaid, plaintiff qualified by subscribing the written obligation prescribed by the Democratic state executive committee, pledging him to support the nominees of the Democratic Party. A like pledge was taken by him in the county convention aforesaid. In both cases, he stated at the time that he would support such nominees to the limit that his conscience would permit.

"(8) Plaintiff was a delegate to, and took an active part in, the state Democratic convention at Beaumont, Tex., above mentioned, and at said convention announced publicly (many members of the state executive committee being present), that he would not support Governor Alfred E. Smith, of New York, an outstanding candidate for nomination as President at the hands of the Democratic Party, if Governor Smith were nominated by said party, because his conscience would not allow him to do so.

"(9) Plaintiff was not a delegate to the Democratic National Convention held at Houston, but was present at that convention, and used his influence against the selection of Governor Smith as the Democratic nominee for President. After that convention was over, he consulted with his friends as to what his attitude should be; that is, as to whether he should, or should not, support the Democratic nominee for President, and finally came to the conclusion that he could not, without violating his conscience, support said nominee, and thereupon at once made that fact public in an interview published in the newspapers on or about July 1, 1928, which decision was finally made and published after the Democratic state chairman had certified his name to the Democratic county chairman of Cameron county, and after the Democratic executive committee of that county had taken its action determining the order of the names on the official ballot for Cameron county.

"(10) The plaintiff, in his statement before the primary committee, made July 9, 1928, at the hearing in which that committee decided to omit his name from the official ballot, and in his testimony in the present cause, given July 11, 1928, has repeated his published statement that he will not support the Democratic nominee for President because his conscience will not permit, but will, on the contrary, do everything in his power to defeat him, even though such action should involve his opposition to, and defeat of, the Democratic nominee for Vice President as well. And on the testimony of plaintiff, the court finds that, whether the name of plaintiff be placed on the official Democratic ballot as a candidate for nomination at the hands of the Democratic Party, or not, and regardless of whether he shall become the nominee of the Democratic Party as its candidate for Lieutenant Governor of Texas, or not, he will, from now until the November election is over, use all means in his power to prevent the election of Democratic electors from Texas, and to prevent the election of the Democratic nominees for President and Vice President, and, if he deems it necessary to that end, will support the Republican nominees for those offices.

"(11) That on or about July 6, 1928, he signed, with others, a call for a public meeting of persons who have heretofore been members of the Democratic Party, to be held at Dallas, Tex., July 17, 1928, to form an organization for the purpose of retaining their Democratic standing, and at the same time fighting and preventing the election of the Democratic nominee for President of the United States, and that the object of the proposed meeting is to create and perfect the organization of what will be substantially a party, with chairmen, county committees, party workers, and speakers, statewide in its organization, for the purpose of lining up as many Democratic voters in Texas as possible, in opposition to the Democratic nominees for President and Vice President, with the ultimate end of preventing said Democratic nominees from having the electoral vote of the state of Texas cast in their favor, and of causing the same to be cast in favor of the Republican nominees for President and Vice President.

"(12) That the effect of printing the name of plaintiff on the official ballot of the Democratic Party as a candidate for Lieutenant Governor of Texas would be to aid the plaintiff and his associates in their efforts to prevent the election of the Democratic nominees for President and Vice President, by making it appear that the Democratic Party of Texas is recognizing them as loyal Democrats affiliating with the party, and to that extent acting and speaking on behalf of the organized Democracy of Texas.

"(13) That the actions of plaintiff since he finally decided upon his course of conduct, as set forth in finding No. 9 above, were not known, and could not reasonably have been anticipated, by the Democratic state executive committee, or the chairman thereof, or by the county Democratic executive committee of Cameron county, or the chairman thereof, at the times they, respectively, took the actions hereinbefore found, and were not in fact determined upon by plaintiff or made known until July 1, 1928, and that the first official action required by law to be taken by any agency of the Democratic Party thereafter was the action taken by said primary committee in refusing to place the name of plaintiff upon the official ballot to be used in Cameron county.

"(14) That the said action of the primary committee was not capricious or arbitrary, but was based on the facts hereinbefore found, and the conclusion reached by said committee therefrom.

"(15) That plaintiff has not since July 1, 1928, been a person affiliating with the Democratic Party, and is not now affiliating with the Demo-

cratic Party, but is an enemy and opponent thereof.

"(16) That, by his actions aforesaid since the date last stated, plaintiff has breached the moral obligations voluntarily undertaken by him in participating in the said precinct, county, and state conventions of the Democratic Party, and intends to continue so to do.

"(17) That the plaintiff, in seeking the relief prayed, has not come into this court with clean hands, but asks the assistance of this court to enable him to perpetrate an injury, and a fraud upon the Democratic Party in connection with his candidacy for nomination at its hands."

[1] From the inception of the government, leaders of political thought have gathered about them men who subscribed to their theories and sought to advance them by combinations which became political parties. It may be safely asserted that the perpetuity of a democracy or a representative government can only be secured and perpetuated through political parties. This thought has been so impressed upon those filling executive and legislative departments of the state that parties have been declared agencies of the state, and regulation has been applied to them in such a rigorous and at times badly conceived manner, that the object of such legislation has had the effect of weakening and almost destroying party government and opening the doors of the party casting a sufficient vote, to have primary elections imposed upon it, to persons of all kinds of political thought and many with no thought at all. The state has assumed the regulation of the affairs of political parties to such an extent as to weaken their potency, impair their usefulness, and render it difficult to choose men for high state offices who are fitted to perform the duties required. An intricate system of laws has been enacted for the government of party primaries, and so many duties have been placed on those holding the primaries as to confuse them and to render necessary at times the assistance of the courts to construe the provisions. No court should seek to read anything into the various requirements and regulations of primaries, but should confine them strictly to the letter of the law. This should be done to preserve the integrity of the party and protect it from fraud and imposition, that would result from compelling party committees to place the names of those who are seeking to defeat other nominees to have a place on the party ticket. It may be that the party is powerless to relieve itself of stultification and contempt which would arise from placing the names of its outspoken enemies on its ballots, because the party nor any of its loyal members can go back of a certificate given by a central committee, but it is not so written in the law, and this court will not lend itself to any far-fetched construction of the powers of the state executive committee as would deprive the constituent committees of the party of defense against any fraud attempted to be perpetrated upon the loyal members of the party. This court is not prepared to hold that the Democratic executive committee of Cameron county cannot in self-defense and defense of its loyal Democratic constituency refuse to place on its primary ticket the names of men seeking office while admitting that they have violated their obligations of loyalty to the party, and intend to carry their disloyalty to the extent of combining with the arch enemies of Democracy in defeating its highest candidates, and thereby cause demoralization, if not disintegration, of the party.

[2, 3] However that may be, and regardless of whether the county committee or its subcommittee did not have the authority to refuse to place appellant's name on the primary ticket, he is in no position to seek aid and assistance from a court of equity, under his own admissions. The maxim is as old as equity itself that "He who comes into a court of equity must come with clean hands," or as sometimes forcefully expressed, "He that hath committed iniquity shall not have equity." Pom. Eq. Jur. § 397. Under the facts of this case, which perhaps has not a parallel in the history of political parties, a man is seeking not only to participate in the councils of the party, but to have himself presented as a candidate for the second highest office of the executive department of the state, at the same time that he is entering into a conspiracy with the enemies of the party whose honors he is seeking, and endeavoring to defeat men who have already been nominated by the highest authority of the party to the two chief offices of the republic. Can he be said to come into a court asking for equitable relief "with clean hands"? He makes professions of loyalty to and faith in the Democratic Party, but his acts belie his words and besmirch his political record with insincerity and disloyalty. His works destroy his profession of party faith, and break down all protestations of love and fealty. As said in Holy Writ: "For as the body without the spirit is dead, so faith without works is dead also." In this instance, however, it is worse than a profession of faith without works to evidence it, for it is a faith professed with works directly against it.

In the case of Westerman v. Mims, 111 Tex. 29, 227 S. W. 178, the facts showed that one Aubrey Fuller had voted in a Democratic primary in which Hon. Robert G. Street was nominated for a district judgeship and afterwards sought to compel the secretary of state, by mandamus, to place his name on the ballot at the general election as an independent candidate. In the majority opinion, Justice Greenwood held that a voter entering the party primary was morally bound to support its nominees, and denied the appellant a writ of mandamus on the ground that, having

participated in the primary that nominated another man, he did not come into court with clean hands. Chief Justice Phillips, in concurring with the refusal to grant the mandamus because the applicant had by his participation in the Democratic Party primary, not only became morally but legally bound to support the nominees, and could not lend himself to defeating one of the nominees by becoming a candidate, said:

"The primary is a barren, useless proceeding unless it binds those who take part in it, to vote for its nominees. Because of this palpable fact, the statute requires that those entering it pledge themselves to so vote. Only by making this pledge are they entitled to take part in it."

Under the terms of both opinions in the case cited, appellant cannot find even standing room in a court of equity. He cannot weaken or destroy his moral and legal obligation to support the nominees for president and vice president named by the National Democracy, by crossing his fingers at the time he signed the pledge and afterwards remarking in an undertone, "I will not vote for Al Smith if he is nominated." By no such quibbling, mental reservation or secret evasion can a man absolve himself from a solemn pledge voluntarily made by him. To uphold such a doctrine would make a football of the statutory pledge and place disloyalty upon a pedestal. The conscience so acute as to prevent a man from voting for a candidate to whom he had bound himself by a solemn obligation, is a false guide and an unwise mentor. To violate that pledge is unconscientious, and such conduct cannot obtain aid in a court of equity. As said by Pomeroy Equity Jurisprudence, § 404:

"The special rules contained in the foregoing paragraphs will serve to illustrate the meaning and operation of the principle. He who comes into a court of equity must come with clean hands, but they by no means exhaust its scope and effect. It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience."

Did appellant act in good faith with members of the Democratic Party when he took the vow of loyalty, with a mental reservation, and with the intention at the time of violating it unless the party nominated a candidate that satisfied his conscience? Certainly not, and he has added to his conduct in entering into a conspiracy with the enemies of Democracy, at a time when he is seeking to obtain a nomination from the party he is seeking to defeat, and to bind its members by the same pledge which he has broken, to cast their ballots for him at the general election, should he be nominated. "He who seeks equity must do equity."

Appellant is not affiliating with the Democratic Party under the definition of affiliation given by him in his petition, for, in addition to entering and voting in primaries and conventions to evidence affiliation in 1926, he added he had supported and voted for the nominees. Affiliation is an alliance with an institution or organization, and he cannot claim affiliation with a party who is organizing and working against the nominees and seeking to elect the nominees of the opposing party. Supporting the nominees is the supreme test of party affiliation.

When appellant took the vow of loyalty to the nominees of the Democratic Party, in order to enter a primary and be sent as a delegate to the state convention at Beaumont, he had every reason to believe that Governor Smith, of New York, would be the Democratic nominee for president, and, if his conscience demanded that he should not vote for him, he should not have taken the vow, but in honor and good faith should have had his name removed from the state ticket and affiliated with the party for whose national nominees he is now working. That action would have met the demands of his conscience, and removed him from a position subjecting him to just criticism.

There is a thorough concurrence by a unanimous court in the judgment rendered herein, and, while no objection has been urged to the language used by the writer, he assumes full responsibility for the same. It is not the intention of this court to censor and criticize the actions of those who have been Democrats, but now forsake their party and enter the ranks of the Republican Party, but its opinion is confined and restricted to the case now under consideration and cases of like character which may arise hereafter. This court recognizes the right of every American citizen to change his political theories and party affiliations, but, when such change is made or contemplated, justice to his former party demands that he should not seek its honors and emoluments.

The judgment of the district court is affirmed.

### On Motion for Rehearing.

[4] This court has not held that any voter can be excluded from participation in a Democratic primary who is willing to take the obligation to vote for and support the nominees, and there is no ground for the argument that such has been the ruling of this court in this or any other case. Unfortunately for the Democratic Party in Texas, the door into its councils has been opened by article 3107, as enacted by the Fortieth Legislature, and so it is that many enemies of Democracy who, like appellant, do not recognize the binding force of the obligation in law and morals, are going into the primaries of the party and attempting to select candidates for those more conscientious, or who have higher conceptions of the binding force

of a voluntary obligation. The statute of 1927, which is named article 3107, in lieu of the old 3107, which sought to exclude negroes from the primaries of white men, has no reference to men who are seeking to enter the primary to obtain honors and not merely to cast a ballot.

The statute of the Fortieth Legislature, Called Session, General and Special Law, p. 193, provides:

"Every political party in this state through its state executive committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this state because of former political views or affiliations or because of membership or nonmembership in organizations other than the political party."

The enactment and the proviso are inconsistent with and repugnant to each other. The one gives power to the party to prescribe the qualifications of its members and "in its own way determine who shall be qualified to vote or otherwise participate in such political party." Then the other deprives the party of the right to deny "the right to participate in a primary in this state because of former political views or affiliations or because of membership or nonmembership in organizations other than the political party." Whatever may be meant by other organizations, whether churches, fraternities, or political parties, such provision could not prevent executive committees from excluding those who are claiming to be members of the party and at the same time announcing that no regard will be paid to the statutory obligation from being placed on a ticket to be voted for as a nominee for some office in the gift of the party. It refers to past opponents of the party and not to present enemies who avow their intention to defeat the nominees of the party. The party can protect itself against a man who wants to be an officer on the ship of Democracy and at the same time states that he will do all he can to destroy the chief officer and scuttle the ship.

The case of Briscoe v. Boyle, 286 S. W. 275, decided by this court, is in no particular similar in its facts to this case. It was held in that case that a voter, not an aspirant for office, could not be required to take an oath that he did not vote for the nominee of another party at the last preceding general election and did not give aid and support to any other party at such election. That referred to past actions on the part of a voter and not to present acts of disloyalty on the part of one seeking the votes of a party for one of its highest state offices. We have seen but one case similar in its facts to this case, and that is the case of Westerman v. Mims, 111

Tex. 29, 227 S. W. 178, which is decisively against the claims of appellant.

The motion for rehearing is overruled.