**ROBBINS et al. v. THOMPSON.** (No. 8086.)

Court of Civil Appeals of Texas. San Antonio.
July 17, 1928.

Rehearing Denied July 21, 1928.

1. Mandamus ⬅168(3)—Court, in suit to require party committee to place plaintiff's name on ballot, should have admitted proof of political standing of petitioners for plaintiff's candidacy (Rev. St. 1925, art. 3113).

In mandamus suit to require Democratic executive committee to place plaintiff's name on Democratic ticket as candidate for county office, court should have permitted proof of political standing of persons signing petition to have plaintiff's name printed on ballot under Rev. St. 1925, art. 3113.

2. Mandamus ⬅168(4)—One who had previously opposed Democratic Party and conditioned support of party on his religious principles could not require placing of name on Democratic ticket (Rev. St. 1925, art. 3107, as enacted by Acts 40th Leg. 1st Called Sess. c. 67).

One who had opposed Democratic Party in previous years and had held office as county commissioner on Independent ticket, and who had never entered Democratic primary, and conditioned his vow of support for Democratic nominees on compatibility with his religious principles, *held* not entitled to mandamus to require entry of his name on Democratic ticket as candidate for county office, notwithstanding Rev. St. 1925, art. 3107, as enacted by Acts 40th Leg. 1st Called Sess. (1927) c. 67.

3. Mandamus ⬅15—One seeking to compel political party to support him must come into court with clean hands.

No person has right to come into court and demand that political party recognize his right to have its members pledged to vote for him in case of nomination unless he comes with clean hands.

Appeal from District Court, Willacy County; A. M. Kent, Judge.

Application by C. F. Thompson for writ of mandamus to be directed to L. O. Robbins and others. From an order granting the writ, defendants appeal. Reversed and rendered.

Davis E. Decker and A. B. Crane, both of Raymondville, for appellants.

R. S. Dorsett, of Raymondville, for appellee.

FLY, C. J. This is an application for a writ of mandamus sought and obtained from the district judge by appellee, to compel appellants, constituting the Democratic executive committee of Willacy county, to place his name on the Democratic ticket as a candidate for the office of county commissioner of precinct No. 2, Willacy county. From the order of the district judge granting the writ of mandamus, the committee, which consists of L. O. Robbins, chairman of the executive committee, Archie Clark, Arthur Johnson, Robert Keene, and G. F. Kieke, has appealed to this court.

Appellee alleged that he had complied with the law in applying for a place on the ticket, which had been refused by the committee. He also alleged that he could not subscribe to an application stating that he had voted for the nominees of the Democratic Party in 1926, because he had not voted for the said nominees at the general election in 1926. The executive committee answered that appellee now holds the office of county commissioner of precinct No. 2, Willacy county, having been elected to the place by a party in the county known as the Independent Party, and has as a nominee of that party defeated the Democratic nominees for the same office at three previous general elections. It was also alleged that, with only two exceptions, those persons signing the petition to have the name of appellee placed on the ticket were not Democrats and did not heretofore support the nominees of the Democratic Party, and did not participate in the presidential precinct conventions in 1928, and that such signers wou'd not support the nominees of the Democratic Party in 1928. It was answered that appellee had not been a Democrat and in 1922 was one of the organizers of the Independent Party, which had elected appellee three times as against Democratic nominees. From the testimony of appellee it is shown that he had "accepted a petition that had been signed by 25 voters in precinct No. 2" to get his name on the ticket, and, although it had been alleged that 23 of the 25 signers were not Democrats, no effort was made to show that the signers were Democrats, but objection was urged and sustained to proof of the political standing of the signers. Appellee stated that he was born in Iowa in 1896, and went to Canada in 1903, when he was about 27 years of age, and while there became a citizen of Great Britain. Evidently he was born in 1876. He lived 9 years in Canada, came back and was naturalized and again became an American citizen. He went directly from Canada to Willacy county in 1912, and never prior to 1922, nor up to the present time, took part in a primary. He was elected county commissioner on the Independent ticket of Willacy county and defeated the Democratic nominees in 1922, 1924, and 1926. He had never entered a Democratic primary nor voted for a Democrat in Texas. He made no effort to enter a Democratic primary until he desired this year to obtain the approval of that party for the position of county commissioner. He said:

"I have used all the means I could honorably to defeat the Democratic nominees in those elections."

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

He swore:

"I don't remember whether or not I voted for any Democratic nominee for state office in the last election. I don't know whether I voted the straight Republican ticket from Governor down at the last election."

Four years ago he voted for Butte, the Republican nominee for Governor, and also voted for the Coolidge electors. He never at any time claimed that he ever cast a ballot for a Democrat since he came to Texas, in January, 1912. He did not enter the Democratic presidential precinct conventions this year. His only pledge in case he was permitted to enter the primary as an applicant for office was:

"I expect to vote for the Democratic nominees unless I would have to violate some religious principle to do so."

He did not define what a nominee must do or had done that would cause him to violate "some religious principle." He further stated:

"I couldn't say that if my name was placed on this ticket I would promise the Democratic Party that I would vote for all the nominees from constable to president, because I couldn't support them if I had to violate a religious principle to do so."

He further swore:

"I never did vote a straight Democratic ticket in my life, and never voted one at all in Texas. I don't know whether or not I am a member of the Democratic Party as it exists in Texas."

He also stated:

"This will be the fourth time that I have run for office in Willacy county, and this is the first time I ever desired to run on the Democratic ticket. I did not apply two years ago to get on the ticket. I never did apply for a place on the Democratic ticket before."

The county executive committee refused the brand of Democracy offered by this man who had been a consistent enemy of Democracy since he landed in Texas in 1912.

[1] While it is provided in article 3113, Rev. Stats. 1925, that the request to have a name printed on a ballot for any county or precinct office may be made through any 25 qualified voters, it cannot be reasonably concluded that 25 Republicans should be permitted by a county committee to name candidates to be placed on a Democratic ticket. Such a ruling would be destructive of party organization and result in party chaos. The governing party committee of a county would have the inherent right to protect their party from the entry of such disintegrating and destructive forces. Honor and good faith should be demanded in organized politics as much so as in other organizations, and no statute can deprive a party of the right to defend itself from the entrance of its enemies into its councils. The court should have permitted proof of the fact that political Greeks were endeavoring to place the wooden horse filled with enemies within the Trojan camp.

[2, 3] The county executive committees are placed by each organized political party in the different counties to watch over and protect the interests of their party and see that none will be permitted to enter its councils or seek its honors unless they can show that they are by past service or present promise, without concealment or mental reservation, loyal Democrats. No man has the inherent right to enter a party primary that he has consistently and persistently fought for years, and not only demand that he be admitted as a voter, but that he be given the right to contend for the honors to be bestowed by the party. No man has the right to come into a court and demand that a party be compelled to recognize his right to have its members pledged to vote for him in case of a nomination, unless he comes with clean hands. Westerman v. Mims, 111 Tex. 29, 227 S. W. 178; Love v. Taylor, 8 S.W.(2d) 795, this day decided by this court. No man who is unwilling to pledge his unconditional fealty to the party has any rights in the party. No man has a right to demand recognition as a Democratic nominee who conditions his vow of support for other nominees on whether he may raise some religious or conscientious objection to any nominee. Such a condition would open up a fertile field for the discovery of objections to the nominees of the party. The county committee had the right and authority to close the door to a nomination for one who was the consistent enemy of Texas Democracy for at least 6 years and who was unwilling to give an unconditional pledge of party fealty. Under the obligation, appellee was willing to assume he was bound by nothing visible and palpable, but his support of the party rested in the secret thoughts of his own mind, and was incapable of being met or probed by any one. No one had ever charged appellee with being a Democrat, but he admitted that he had often been called a Republican and never denied it.

Under the loose procedure, possibly not denounced, if not sanctioned by the statute, any and all character of voters can take a perfunctory vow of party loyalty, which has so little importance attached that many men and women assume to set aside the obligation if they do not like the religious or economic views of a candidate, and set aside their political vow with the same ease that you erase a mark on a slate with an eraser, or a chalk mark on a blackboard with a cloth. There can be no distinction in law or morals between the plighted word of honor voluntarily given in a political convention and one made in the solemn sanctuary of church or court. Mental reservation in the one instance is as culpable as in the other, and disregard of the vow as dishonorable in the one instance as the other.

While the statute, article 3107, as enacted

by Acts 40th Leg. First Called Sess. p. 193, seems desirous, in not a very lucid way, of destroying party lines by providing, "No person shall ever be denied the right to participate in a primary in this state because of former political views or affiliations, or because of membership or nonmembership in organizations other than the political party," yet it has not attempted to provide that men who have at all times fought the Democratic Party shall be placed on the party ticket for offices to be voted on by members of the party. The statute may be able to force committees to allow Republicans and others of different political faith to vote in Democratic Party primaries, but cannot force the executive committees to place enemies of the party on its tickets to be voted for by loyal Democrats.

We conclude that the judgment should be reversed, and judgment rendered setting aside the writ of mandamus, assessing costs against appellee.