## SCURRY v. NICHOLSON. (No. 12120.)

Court of Civil Appeals of Texas. Fort Worth. Sept. 29, 1928.

Rehearing Denied Oct. 23, 1928.

748

Bonner, Bonner & Fryer, C. C. McDonald, and F. W. Fischer, all of Wichita Falls, for appellant.

Alton V. Grant and W. J. Townsend, both of Wichita Falls, for appellee.

CONNER, C. J. This appeal is from an order of the Honorable Judge of the eighty-ninth district court of Wichita county, granting appellee a temporary injunction. The appellee, in his petition for the writ, alleged, in substance, that he was a Democrat, taxpayer, and a qualified voter in precinct No. 17, of Wichita county, and as such became a candidate for and was duly elected as chairman of said precinct in the primary election on July 28, 1928, and as such became a member of the Wichita county Democratic executive committee, having since duly qualified as such officer and assumed the duties of said office; that the defendant on the same date had been elected chairman of the Wichita county executive committee, and had entered upon the duties of such office; that the county Democratic executive committee was duly convened on September 4, 1928, to attend to important matters brought before them, and that the defendant, "without any reason or cause whatsoever, unlawfully and fraudulently and with malice against this plaintiff declared the chairmanship of precinct No. 17 vacant, and then and there informed this plaintiff that said plaintiff would no longer be allowed to serve as said precinct chairman and member of said committee," and would no longer recognize the plaintiff as a member of said committee, refused to count the vote of said plaintiff on important motions voted upon, and thereby deprived plaintiff of his legal right to function as said precinct chairman and member of said committee. It was further alleged that, unless restrained by order of the court, the defendant will declare the office of the plaintiff vacant, and will completely dispossess this plaintiff from the same and attempt to appoint a successor. The prayer of the plaintiff was for notice to the defendant and a granting of the petition.

On the same day, the defendant appeared and filed his duly verified answer, which, omitting the general demurrer and general denial, reads as follows:

"The defendant, specially answering, says that at the first meeting of the members of the Democratic executive committee for Wichita county, who were elected on July 28, 1928, the defendant called said members together, he being the duly elected chairman of said committee; that at said meeting the majority of the members thereof prescribed a pledge of fealty to the Democratic party to be taken by

each member thereof as a qualification to membership of said committee, as is fully shown by the attached Exhibit A; that the plaintiff refused to take such pledge, and announced that he was then supporting and would continue to support the Republican nominees for President and Vice President of the United States; that the members of the executive committee, by a majority vote, then declared the office of precinct chairmanship of precinct No. 17 vacant, and authorized this defendant to fill such vacancy by appointment; that, in pursuance of such authority, this defendant has appointed J. B. Hatchitt to fill such office, and he has accepted such office, and is now filling the same, having taken the pledge prescribed by the committee; that, by reason of the foregoing facts, the plaintiff's petition for injunction should be denied: Wherefore, the defendant prays that he be dismissed herein with his costs."

The resolution referred to in the answer of the defendant, and shown in Exhibit A, reads as follows:

"Resolution No. I.

"Whereas, it has been rumored that certain members of the Democratic executive committee of Wichita county, Tex., who were elected on July 28, 1928, are not supporting all of the nominees of the Democratic Party, and in order to refute such rumors and assure the Democracy of Wichita county, Tex., that the members of the executive committee are unanimously in support of all the nominees of the Democratic Party, be it resolved that we, the undersigned, the members of the Democratic executive committee of Wichita county, hereby individually pledge ourselves to vote for Alfred E. Smith for President of the United States, as well as all of the other nominees of the Democratic Party, and we further pledge ourselves to openly and publicly support and work for the election of Alfred E. Smith as President of the United States, as well as all other nominees of the Democratic Party."

It appears that a hearing was had, after which the order from which the appeal has been prosecuted was entered, granting the prayer of the plaintiff for writ of temporary injunction. No statement of facts has been brought before us, but the court filed his conclusions of law and fact which, so far as we deem it necessary to quote, reads as follows:

"The court then heard the testimony in the case, which established the following facts:

"(1) That on July 28, 1928, the persons voting in the Democratic primary in election precinct No. 17 elected relator as precinct chairman, and he entered upon his duties by attending the first meeting of the new executive committee. That he has heretofore affiliated with the Democratic Party, and still claims allegiance to the same, but refuses to support Governor Smith and Senator Robinson, the nominees for President and Vice President.

"(2) That he refused to sign the pledge proposed by the majority of the county executive committee, and said committee declared his office vacant for that reason, and authorized

the county chairman, respondent here, to appoint his successor and report the appointment on Saturday September 8th to the full committee.

"(3) That on the 5th day of September, 1928, respondent verbally appointed J. B. Hatchitt to fill the vacancy thus created.

"(4) That respondent will recognize said Hatchitt as chairman of precinct No. 17, and will refuse to recognize relator as such hereafter, unless required to do otherwise.

"(5) That relator participated in the presidential primary in May, 1928, but did not remember whether he signed the pledge to support party nominees; if he did, it was with mental reservations.

"As to the law of the case (and it is upon the principles of law alone the case must be decided), there is really but one question; that is, Did the county executive committee exceed its power when it prescribed a pledge for its members and visited the penalty of expulsion upon those who refused to take said pledge? The relator is, as shown by the evidence and admitted in the pleadings, the duly elected member of the county executive committee from election precinct No. 17, and is entitled to be recognized as such unless he has forfeited his right by his failure and refusal to support the head of the ticket. He frankly admitted his opposition to Governor Smith, and says he will not vote the national Democratic ticket because of his personal feeling against Mr. Smith. He also admits his membership in a political organization of some kind which he calls 'anti-Smith Democrats.' "

As recited in his conclusions of law, the court felt that he was not concerned with the questions of the consistency or ethical status of the relator, but that no statute called to his attention gave the right to the county Democratic executive committee to demand a pledge such as the plaintiff refused to take, and, in case of refusal, declare a forfeiture of his office; that the only pledge prescribed by law was that prescribed by article 3110 of the Revised Statutes; that the law providing for the election of a precinct chairman does not specify such qualifications or demand pledges of them; and that the kind and character of party leaders is left to the discretion of the electorate of each precinct. The decision of the Court of Civil Appeals at El Paso, in the case of Ware v. Welch, 149 S. W. 263, was cited by the court, as was article 3118, providing that vacancies in the committee shall be filled by a majority vote of the executive committee. The court concluded as follows:

"Believing as I do that the majority of the county executive committee does not have the power under the law to remove a duly elected member from his office because he will not sign a pledge prescribed by such majority and not by any statute of the state, I overrule the general exception and grant the temporary injunction prayed for in this case, to which defendant in open court excepted and gave notice of appeal to the Court of Civil Appeals, Second Supreme Judicial District, at Fort Worth, Tex."

▉ In the absence of statutory power, conferred upon them, the courts have no power to interfere with the judgments of the committees and tribunals of established political parties in matters involving party government and discipline. In such cases, questions relating to the regularity of conventions and nominations of candidates and the constitution of committees should be determined by regularly constituted party authorities, rather than by the court, and the court will not undertake to tell which of two county committees is the proper one; nor will they pass upon questions of membership in party committees where a proper party tribunal exists for the determination of such questions, and so, as far as party nominations are concerned, the decision of dispute rests with the party whose nomination is claimed. See 9 R. C. L. 1070, paragraph 84.

▉ However, the right of the state to regulate primary elections is not questioned. On the contrary, such right has been expressly upheld. In the case of Staples v. State, 112 Tex. 61, 245 S. W. 639, it was contended that the state as an entity or political sovereignty was not interested in the result of any primary election. As to this, the court said:

"The state as such entity" or political "sovereignty is certainly interested in the enforcement of its laws, in the purity of the ballot and the sanctity of general elections, and in the final outcome as developed by the general election."

It was held in effect that such interest was sufficient to authorize legislation to regulate primary and other elections. See, also, Ware v. Welch (Tex. Civ. App.) 149 S. W. 263; Robbins v. Thompson (Tex. Civ. App.) 8 S.W.(2d) 813. We accordingly overrule the suggestion that the question presented to us is purely political and lies outside of the boundaries of our jurisdiction.

▉ Article 3118, c. 13, Revised Statutes, provides that there shall be for each political party required by law to hold primary elections for nomination of its candidate, a county executive committee, to be composed of a county chairman, and one member from each election precinct. The precinct committeeman shall act as chairman of his election precinct, all committeemen to be elected on the general primary election day by the qualified voters, the county chairman by the qualified voters of the county, and the precinct chairman by the qualified voters of their respective election precincts. The article further provides that:

"Any vacancy in the office of chairman, county or precinct, or any member of such committee shall be filled by a majority vote of said executive committee."

It is contended in behalf of appellee, that, while the Democratic executive committee of Wichita Falls, by virtue of this article, may have had authority to fill a vacancy in the committee, it was without authority to create one, and that hence appellee's ouster or attempted ouster was unlawful. The case of Ware v. Welch, supra, is pressed upon us as upholding this contention. We think the case of Ware v. Welch, however, is distinguishable from the one before us. That was a case in which Ware and others sought to enjoin Welch and others from ousting them from membership in the Democratic executive committee of El Paso county, and substituting others in their places. It was alleged by plaintiffs in the action that they had been duly elected and qualified as members of the county committee; Ware having been elected and qualified as chairman of the committee. It was alleged that Welch and the other defendants "wickedly and unlawfully conspired and confederated together, and each with the other, to prevent plaintiffs and each of them from participating in said meeting of said executive committee," that certain of the named defendants, "without any foundation in law or fact," asserted that they and each of them was a member of the executive committee, and had intruded themselves in the meeting of the committee, and that the chairman Ware was aiding and abetting them in so acting; that Ware and the other defendants would refuse to permit plaintiffs or any of them to vote on any measure or matter upon which, as members of said committee, the plaintiffs had a right to vote, and would prevent the plaintiffs from so voting by "intimidation and coercion," etc.

Upon presentation of the petition as worded and indicated, the court entered its order that the injunction issue, from which order the appeal was taken to the El Paso Court of Civil Appeals. It was held that the action would lie, and that the injunction was properly issued. But a reading of the petition discloses that the decision was grounded alone upon the allegations of the petition; no evidence having been heard or answer filed.

The court therefore, under well-settled rules, was required to accept the allegations as true. Taken as true, the plaintiffs in that case were in all things duly elected and qualified as members of the Democratic executive committee of the county, and others were, without right, aided by the chairman, intruding themselves, and threatening to deprive the plaintiffs of acting in the performance of their duties as committeemen, all without right or lawful cause.

We think the El Paso court came to the proper conclusion, for the power of the court to protect committeemen, duly elected and qualified under our primary election laws, and hence at least de facto officers, from arbitrary and unwarranted interference with the performance of their duties, must be up-

held. It is evident from the findings of the trial court in this case that his judgment was based upon the decision of the El Paso court, and the further conclusion that the appellee was not required to take the pledge required of him. Article 3110, of the Revised Statutes, provides that no official ballot for a primary election shall have on it any symbol or device or any printed matter except a uniform primary test reading as follows:

. "I am a ——— (inserting name of political party or organization of which the voter is a member) and pledge myself to support the nominee of this primary."

And it was held, in a majority opinion of our Supreme Court in the case of Westerman v. Mims, 111 Tex. 29, 227 S. W. 178, that the pledge so prescribed was not legally enforceable. But it is to be observed that the pledge quoted has reference to and is applicable in terms to the voter and not to a pledge that a Democratic executive committee might see proper to exact. It is to be further observed that the pledge required of appellee by the appellant committee was evidently intended to give assurance in aid of the electors for President and Vice President selected by the Democratic party in the coming election. It apparently at least has no material bearing upon questions that may affect the balance of the ticket, such as state, district, and county officers. For it was not and is not pretended that appellee would not in all things and in all cases support this class of candidates. It is to be further observed that a special chapter of our primary laws (chapter 11, arts. 3079 to 3085, inclusive, of the Revised Statutes) is devoted to the selection of presidential electors, which, because of the present well-known condition, is now of chief political concern to the political party to which all persons directly concerned in the present litigation, claim to be members. This legislation is in pursuance of article 2, § 1, of the Constitution of the United States, providing for the election of the President and Vice President by electors appointed by the several states of the Union, "in such manner as the Legislature thereof may direct." By reference to article 3079 to 3084 of the chapter referred to, it will be seen that persons qualified to serve as electors must be elected at a regular election, no nomination being provided therefor in a primary election as in the case of state or district officers. We know of no law relating to the nomination and election of electors for President and Vice President, which inhibits the controlling agency of a political party from prescribing, in good faith, such rules, regulations, or pledges, as are reasonable and not in contravention of any law, and intended to promote the success of its presidential candidates; it being the rule, as heretofore indicated, that, in the absence of statutory control, the courts commit to the political

parties concerned all reasonable regulations. In so far, therefore, as the Democratic executive committee of Wichita county required of appellee a pledge to vote for and support the nominees of the Democratic party for President and Vice President, in the coming election, we see no reason to justify a complaint on appellee's part. Possibly, in the further requirements, the pledge is too wide in its scope, .and, because of this, the able trial court may have been influenced in rendering the judgment he did. But, if so, we regard it immaterial, as we think the conclusion reached by us is fully supported by reasons other than appellee's refusal to take the pledge required of him.

The findings show that appellee not only refused to sign the pledge proposed by the majority of the county Democratic executive committee, but also that he frankly admitted and declared that he would not vote the national Democratic ticket, and further admitted his membership in a political organization designated as "anti-Smith Democrats," known to be in hostile and active opposition to the nominees of the Democratic Party, vigorously working for the success of the Republican nominees for President and Vice President.

We think it must be conceded that, in the absence of some legislative interdict, that the Democratic executive committee of any single county may properly enforce a rule or regulation prescribed and enforced by the supreme powers of the organization, and it is common knowledge, of which we may take judicial notice, that, in the late state Democratic convention, that body unhesitatingly refused to recognize and ousted delegates from a number of counties, including Tarrant county, who had avowed their purpose of supporting the nominees of the Republican Party for President and Vice President. It is likewise so known to us that the Democratic executive committee of the nation peremptorily ousted and named another in place of a member of the national Democratic executive committee from the same county on the same ground. As was so well stated by Chief Justice Phillips in his dissenting opinion in the case of Westerman v. Mims, supra:

"The purpose of a primary is not alone to make a choice of party candidates. It is to make a choice binding upon the party membership, particularly those who participate in the primary, whereby the strength of the party will be combined and unified for the success of its nominees at the general election. Each member of the party is entitled to vote his preference in the primary. But the essence of the primary is its binding effect upon those who enter it. No one is obliged to enter it, but if a party member does not expect to be both morally and legally bound to respect its result, he ought to stay out of it. The consideration for his agreement to vote for its nominees is the benefit accruing to him from

the same agreement made by all the other party members participating, whereby the ultimate election of his choice of candidates, if selected in the primary, will be furthered, and, at all events, the party will be afforded in the general election a united voting force for the election of its nominees. As a loyal member of the party he is supposed to be concerned in the success of its nominees, whether they be the choice he expressed in the primary or not. The primary is a barren, useless proceeding unless it binds those who take part in it, to vote for its nominees."

The case of Robbins v. Thompson, 8 S.W. (2d) 813, by the Court of Civil Appeals at San Antonio, was one in which an action had been brought by Thompson to compel the Democratic executive committee of Willacy county, to place his name upon the ticket as a candidate for the office of county commissioner. The evidence tended to show that he had never participated in a Democratic primary, had never voted for a Democrat in this state, and had at all times previously aligned himself with parties in antagonism to the Democratic Party. In disposing of the case, Chief Justice Fly, who wrote the opinion, aptly states that the governing party of a county would have the inherent right to protect their party from the entry of such disintegrating and destructive forces, and that honor and good faith should be demanded in political organizations as much so as in other organizations, and that no statute can deprive a party of the right to defend itself from the entrance of its enemies into its councils.

We approve what has been so well said by the eminent authorities referred to, and conclude that, in the absence of any statute prohibiting it (and there is none that we have found), and under the facts found (regardless of appellee's refusal to sign the test required), the Democratic executive committee of Wichita county had the inherent right, not only to refuse to permit appellee to participate in its proceedings, but also to oust appellee from membership and substitute another, found to be qualified, in his place.

If, however, for any reason, the conclusion reached above should be erroneous, there are yet other grounds, well supported by the authorities, upon which the court below should have denied appellee the injunctive relief that he seeks. Injunctive relief is granted by the courts upon equitable grounds only, and it is a maxim of equity that "he who comes into a court of equity must come with clean hands." Can. it be said that one, who in a Democratic primary seeks a position as a committeeman, and who refused to take the test of fealty required by the primary law, or takes it with the mental reservation to ignore it if he chooses, and who later openly avows himself opposed to the nominees of the party as made by its

highest authorities, and actively aligns himself with the forces of an antagonistic and opposing party, is a person having clean political hands and entitled to honors in the Democratic executive party organization and to the interposition of the courts? We think not.

In the case of Westerman v. Mims, supra, the Supreme Court, after having ruled that a test required of the voter in a Democratic primary was only binding in the forum of the conscience, further held, upon grounds similar to those appearing in the case before us, that the applicant for relief was not entitled thereto. See, also, to the same effect, the case of Love v. Taylor, 8 S.W.(2d) 795, by the San Antonio Court of Civil Appeals.

We finally conclude that the judgment below should be reversed and here rendered, setting aside the writ of injunction, denying appellee all relief, and adjudging against him all costs here and in the trial court.