**COUCH et al. v. HILL, County Clerk, et al.*** (No. 8147.)

Court of Civil Appeals of Texas. San Antonio. Oct. 20, 1928.

Gib Callaway, of Brownwood, Grade Callaway and J. C. Epperson, both of Edinburg, and Griffin & Kimbrough, of McAllen, for appellants.

D. W. Glasscock, of Mercedes, B. D. Tarlton, of Corpus Christi, E. A. McDaniel, of McAllen, and Geo. P. Brown, of Edinburg, for appellees.

SMITH, J. On August 4, 1928, designated by statute as the day on which political party county conventions shall be held in this state, two groups of citizens of Hidalgo county held separate county conventions in said county;

*Writ of error dismissed.

each group claiming to be the only regularly and legally authorized, constituted, and organized county convention of the Republican Party in and for said county. One of said conventions, hereafter designated as the Ferguson convention, was presided over by Willard Ferguson as chairman, the other, hereinafter referred to as the Watts convention, was presided over by E. W. Watts as chairman. Each convention elected a separate set of delegates to the approaching state Republican convention, which had been called to meet at Fort Worth on August 14. Each convention declared the election of a chairman of the county Republican executive committee; the Ferguson convention naming the said Ferguson as such county chairman, and the Watts convention naming Harry Carroll as such county chairman. In addition to these several actions, the Ferguson convention went further and nominated a candidate for the Legislature and candidates for each county office and some of the precinct offices of said county. The Watts convention, however, made no nominations.

Ferguson, acting as chairman of the county executive committee, certified to the county clerk the names of the nominees of his convention, for the purpose of having said names printed on the official ballot to be voted at the approaching general election.

Ferguson, designated by the Ferguson convention as county chairman, and Carroll, designated by the Watts convention as county chairman, each certified to the Republican state executive committee the names selected by the respective county conventions as delegates to the state convention, and also certified the name designated by each convention as chairman of the county executive committee. Ferguson and Carroll and their respective friends followed up these certificates, and urged their respective claims to regularity and legality upon the state executive committee, which, after an apparently full hearing of the contest, recognized and approved the regularity and legality of the Watts convention and its acts and procedure, and repudiated the Ferguson convention and its acts and procedure; that is to say, the state committee placed the names of the Watts delegates on the roll of the State convention as the regularly elected delegates thereto from Hidalgo county, and rejected the Ferguson delegation, and that committee also approved and confirmed the action of the Watts committee in declaring Carroll to be the regularly elected chairman of the executive committee of Hidalgo county, and repudiated the action of the Ferguson convention in declaring Ferguson's election as such chairman. On the following day, the action of the state committee upon the Hidalgo county controversy was fully upheld and ratified by the credentials committee of the state convention, and finally by that convention as a whole. This action of the state executive committee and state convention was certified by the party state officials to the county clerk of Hidalgo county, who thereupon refused to arrange to have the nominees of the Ferguson convention printed upon the official ballot. Those nominees brought this action against the county clerk and county election board to require them, by writ of mandatory injunction, to put the names of said nonminees on said official ballot. The trial court refused to grant the writ, and this appeal resulted.

■ This being an injunction proceeding, the burden rested upon appellants as the petitioners below to affirmatively show every fact necessary to entitle them to a place on the ballot as the nominees of the Republican Party for the offices respectively sought by them. They did not meet that burden, and the trial court properly denied them the extraordinary relief sought by them.

The controlling question is, Which of the two conventions was the regularly constituted Republican convention for Hidalgo county? or, which one of them had authority to speak for the party in that county, and which had no such authority? Ordinarily, that is a purely political question, to be determined by the political party under whose banner and in whose name the rival conventions seek the favor of the public at large. And, unless that prerogative is placed in other agencies by clear and positive statutory provisions, the governments of the several political parties shall be the sole judges of the qualifications of the members and candidates of the parties, and shall have the sole power of selecting its own agencies and of determining contests between those agencies concerning purely party matters.

■ Here there were two separate county conventions, held on the same day for the same purposes, each claiming to be and represent the Republican Party in the county. In the very nature of the transaction, one of those conventions was regular, the other irregular; one was the duly authorized, constituted, organized, and functioning Republican county convention, the other a mere mass meeting without authority to represent or bind the Republican Party or any of its members. The acts of one were regular and effectual for the objects and purposes of the meeting; the acts of the other were futile. The transaction constituted a dispute between two factions, each purporting to be and represent the regular Republican organization in that county. It was a controversy apparently wholly within the party. The two factions took their dispute to the highest party authority, presented their respective contentions to that authority, produced evidence in support of their claims, and invoked the judgment of that authority, which determined the controversy. We hold that that determination was final and conclusive upon the

172

parties to the contest, and that no court has any authority to go behind the decision of the state committee for the purpose of meddling with a controversy so wholly political in its nature. Westerman v. Mimms, 111 Tex. 29, 227 S. W. 178; Love v. Taylor (Tex. Civ. App.) 8 S.W.(2d) 795; Robbins v. Thompson (Tex. Civ. App.) 8 S.W.(2d) 813; Scurry v. Nicholson, 9 S.W.(2d) 747, decided by the Court of Civil Appeals, Second District, September 29, 1928.

■ Appellants contend that this controversy is a contest for nomination as contemplated in the statutes providing for contests for nominations for office (Rev. St. arts. 3146–3148), and that the procedure prescribed in those statutes should have been pursued by appellees in this case. We do not regard this as such contest. Appellees are not concerned in the matter—so far as settling the law in this case goes—except to comply with the provisions of the law regarding the printing of the official ballots. Appellees are not contesting the validity of appellants' nominations; they simply refrained from publishing appellants' names as the nominees of the Republican Party, and from printing those names on the official ballot, in the face of information from the highest party authority that appellants are not the nominees of the party under whose name they seek designation upon the ballot. Appellees were justified in this course, and may persist in it until appellants show that they are in fact the regularly and legally selected nominees of that party. They have not done so, and therefore they will be left as the trial court found them.

■ So is it contended by appellants that the duty of the county clerk to publish appellants' names as the nominees of the Republican Party for the offices they seek, and to print those names on the official ballot, was purely ministerial in its character; that the clerk is clothed with no discretion in the matter; and that, upon receipt of Ferguson's certificate, the duty was absolutely mandatory upon the clerk to publish appellants' names and place them on the official ballot. We overrule this contention. The clerk's duty is to publish the names in the certificate, and print them on the ballot, when those names are of "candidates who have received the necessary votes to nominate" them (article 3129), and when those names "have been lawfully certified to him" (article 3132). The official ballot shall contain the names of those only "whose nominations for an elective office have been duly made and properly certified" (article 2978), and "no name shall appear on the official ballot except that of a candidate who was actually nominated * * * in accordance with the provisions of this title" (article 2978). In view of these provisions, and as a practicable matter besides, it is clear that the county clerk must not blindly

publish and print on the ballot every name certified to him as a party nominee, but must proceed cautiously, satisfying himself as to the authority of the person certifying; and, when he is made aware of facts or circumstances which cast reasonable doubt upon the authority of the one certifying, or upon the regularity or legality of the nomination of the persons whose names are certified to him, it becomes his duty to ascertain the true facts before he performs the important duty prescribed for him in such cases.

The judgment is affirmed.