**PULLIAM v. TRAWALTER, County Clerk, et al.**

No. 10567.

Court of Civil Appeals of Texas. San Antonio.

Oct. 13, 1938.

Rehearing Denied Oct. 15, 1938.

Leonard Brown and Joe Burkett, both of San Antonio, for appellant.

Weber & Wolfe, Elmer Ware Stahl, A. R. Sohn, and Brooks, Napier, Brown & Matthews, all of San Antonio, for appellees.

SLATTON, Justice.

Will W. Wood instituted this suit in the 73rd District Court of Bexar County against Albert G. Trawalter, County Clerk of Bexar County. Wood alleged that he was the Democratic nominee for the office of sheriff, having been nominated at the general Democratic primary held July 23, 1938, and that he had been certified to the election board and the County Clerk, and was entitled to all privileges accorded to such nominee under the statutes of this State. He further charged that Sam W. Pulliam had demanded of Trawalter that his name be published and printed on the ballot as the nominee of the Republican party at the General Election. Wood charged that Pulliam was not entitled to the demand made by him because Pulliam had participated in the Democratic primary as a voter. Wood further charged that Pulliam was not the legal nominee of the Republican party for such office, in that no precinct conventions were ever called or held, as required by the statutes, by said party, and that no notice was ever given for the place and manner of holding such precinct conventions. Wood further charged that the purported actor as the chairman of said party was not elected as required by law, but appointed, in violation of law. It was further charged that Pulliam was never nominated by said party at any precinct or county convention, and that a pretended convention which attempted to nominate Pulliam was attended by parties who were morally disqualified to partici-

pate, in that they had participated in the Democratic primary.

It was further charged that such illegal Republican convention was adjourned without nominating any candidate for the office of sheriff, and the nominating committee purported to meet on August 22, 1938, and nominate Pulliam, contrary to the laws of this State. Wood further charged that it was the intention of the County Clerk to publish and print the name of Pulliam, unless restrained from doing so by the court, and that he would suffer irreparable injury and damage, and that he was without adequate legal remedy. The trial court issued a restraining order and the County Clerk entered his appearance. Sam W. Pulliam, on October 3, 1938, sought to intervene in the cause and oppose injunctive relief to Wood, and affirmatively prayed that his name be published and printed upon the ballot as the nominee of the Republican party for the office of sheriff of Bexar County.

On October 3, 1938, the trial court heard the evidence and granted to Wood the temporary injunction, and denied Pulliam any affirmative relief, and denied mandamus which was asked by Pulliam against the County Clerk.

October 5th, Pulliam filed a motion to dissolve the temporary injunction granted to Wood against the County Clerk, and the court upon the same date denied such motion, hence Pulliam appeals.

Article 2978, R.C.S.1925, in part provides: "No name shall appear on the official ballot except that of a candidate who was actually nominated (either as a party nominee or as a non-partisan or independent candidate) in accordance with the provisions of this title."

Article 3134 provides for county and precinct conventions and the manner of holding such conventions.

Article 3156 provides the manner of selecting county nominees by parties of ten thousand and less than one hundred thousand.

Article 3157 provides that county nominees chosen under Art. 3156 shall be certified by the chairman of the county committee.

Article 3118 provides for the filling of a vacancy of the office of county chairman by a majority vote of the county executive committees.

■ The record reflects and the court judicially knows that the Republican party comes within the terms of Art. 3154 et seq. that is, that the candidate of that party for the office of Governor received at the General Election held in this State in November, 1936, more than ten thousand and less than one hundred thousand votes. It is also shown without dispute that Will W. Wood is the Democratic nominee for the office of sheriff of Bexar County and has the certificate as such nominee. Wood, as such nominee, has a legal right to restrain the general election officials from printing the names of unauthorized persons on the general election ballot. Art. 2978; R.C.S.1925; Bounds v. McCallum, 122 Tex. 116, 52 S.W.2d 1047.

■ The contention of Wood in this case that Pulliam has not been legally nominated or chosen by the Republican party under the statutory law of this State, is not an election contest within the contemplation of Art. 3146, et seq. Couch v. Hill, County Clerk, et al., Tex.Civ.App., 10 S.W.2d 170.

■■ If the statutory law of this State had not declared the method and manner of choosing and selecting the party candidates of a party within the class of the Republican party the courts would have no right to pass upon that matter, but the law is clear and specific as to the manner of selection of party nominees and the law forbids the printing on the official ballots the names of persons who are selected in violation of the law.

■ Proof was tendered by Wood that Pulliam was not certified as a Republican nominee for the office of sheriff of Bexar County by the Chairman of the Republican County Executive Committee in Bexar County. It was further shown that the party who attempted to certify to Pulliam's nomination was not elected at a Republican primary, nor chosen by a majority of the Executive Committee of such party, but was appointed as chairman of the Executive Committee of Bexar County by the State Chairman of that party. It is clear from a reading of the statutes above mentioned that this manner of selection is in violation of law. Proof was further tendered by Wood that the Republican party did not hold a county convention during the year 1938, and had no meeting for the purpose of selecting county nominees for such party. The

party not having assembled in the manner and at the time required by law, it certainly cannot be said that in the absence of such conventions it could legally select party nominees. There was evidence offered by Pulliam which tended to show that such conventions were held, but the action of the trial court in granting the relief to Wood must be construed to be a finding in favor of Wood and against Pulliam upon the issues thus presented. It follows, therefore, that Wood, holding a certificate as the Democratic nominee for the office of sheriff of Bexar County, and Pulliam not having been chosen in accordance with law as a nominee of any party, was entitled to the relief granted to him by the trial court. Bounds Case, supra; Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037.

Pulliam, in addition to defensive pleading urged against Wood, also sought a mandamus against the County Clerk requiring him, with the Election Board of Bexar County, to print his name upon the official ballot as the Republican party's nominee for the office of sheriff of said county. In his sworn pleading seeking such relief this admission is made, to-wit: "Comes now the intervener (Pulliam) and says that it is true that he did vote in the Democratic primary, on July 23, 1938. * * * But expressly denies that he took the pledge as alleged, and in this connection says that before voting the ballot furnished him by the election officials, intervener scratched and erased from said ballot said pledge."

Pulliam, having participated in the General Democratic Primary on July 23, 1938, is not entitled to receive aid from a court of equity, nor is he entitled to the issuance of a mandamus. Westerman v. Mims, 111 Tex. 29, 227 S.W. 178; Love v. Taylor, Tex.Civ.App., 8 S.W.2d 795. We quote briefly from the Supreme Court in the Mims Case [page 179]:

"It is not the law that the writ of mandamus must be granted in every case upon a showing by relators that articles 3164, 3165, and 3166 of the Revised Statutes have been complied with. If the court were under any such compulsion, then the

writ would have to be awarded, though the candidate named were confessedly ineligible to hold the designated office. It is elementary that a mandamus will not be issued to compel the doing of that which the law forbids, and chapter 13, of the General Laws of the Thirty-Sixth Legislature, p. 17, expressly forbids the placing of the name of an ineligible person on the ballot at a primary or general election. Manifestly one who seeks relief through this extraordinary proceeding must show himself entitled thereto under all applicable law, no matter where embodied.

"If one is under obligation, legal or moral, to support a nominee of a party primary, the act of becoming a candidate against the nominee necessarily involves the breach of that obligation. Those who invite the breach cannot escape responsibility for the wrong it may involve. We are therefore of the opinion that, if respondent Fuller could not maintain this action, under the averments of relators' petition, neither can the relators. * * *

"It is generally held by the courts of last resort in America that the writ of mandamus is a discretionary writ, and it is frequently stated that it is not a writ of right. * * *

"The rule that he who seeks a mandamus must present his application with clean hands has no different meaning from the general maxim in equity that 'he who comes into equity must come with clean hands.' * * *

"Having concluded that the petition of relators is grounded on conduct amounting to an invitation to, and hence participation in, an act violative of good faith and of conscience, it follows that relators did not come into court with clean hands, as required to entitle them to the relief prayed for, and hence the mandamus is denied."

These quotations from the Supreme Court demonstrate that Pulliam was not entitled to equitable affirmative relief, nor was he entitled to the writ of mandamus.

Accordingly, the decree entered by the trial court is affirmed. The time for filing motion for rehearing will be limited to 2 p. m. Friday, October 14, 1938.