

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 3, 1952

Hon. R. C. Marshall
County Attorney
Hutchinson County
Stinnett, Texas

Opinion No. V-1529

Re: Authority of the county
clerk to refuse to place
on the general election
ballot party candidates
selected at a county
convention which was re-
cessed from time to time
for a month after the
meeting date.

Dear Sir:

Your request for an opinion of this office
is in substance as follows:

"On September 10, 1952, the county
clerk received from the county chairman
of the Republican Party a certificate
dated September 8, 1952, nominating
county and precinct candidates at a meet-
ing certified as held on August 2, 1952.
However, the meeting of August 2 was re-
cessed from time to time until September
5, on which date nominations were actual-
ly made.

"May the county clerk legally refuse
to order these nominations printed on the
general election ballot?"

The nomination of candidates by the Republi-
can Party for places on the 1952 general election bal-
lot is governed by Sections 222 to 225 of the Texas
Election Code (V.C.S. Election Code, Arts. 13.45--13.-
48), which pertain to nominations by parties casting
between 10,000 and 200,000 votes for Governor at the
preceding general election. Section 224 reads:

"Nominations for district offices
made by such parties shall be made by
conventions held on the second Tuesday of
August of the election year, composed of
delegates elected thereto at county

conventions held on the same day herein
prescribed for such county conventions
of other parties all of which county con-
ventions shall nominate candidates for
county offices of such party."

By reference to Section 212 of the Election
Code, which provides for the holding of county con-
ventions "on the first Saturday after primary election
day of 1952 and each two years thereafter," August 2
was fixed by law as the date for holding the county
conventions for nominating Republican candidates for
county and precinct offices in the 1952 general elec-
tion.

Section 225 of the Election Code provides:

"All nominations so made by a State
or district convention shall be certified
by the chairman of the State or district
committee of such party to the Secretary
of State and a nomination made by a county
convention, by the chairman of the county
committee."

Neither Section 225 nor any other provision
in the election laws specifically states the time
within which these nominations must be certified. We
think they must be certified in time for the county
clerk to comply with the posting requirements of Sec-
tion 210, Election Code, but there is no clear author-
ity for fixing an earlier deadline for the filing of
certificates of county and precinct nominations. Sec-
tion 227 of the Election Code permits the filing of
applications of independent candidates up to 30 days
after the second primary election. Since the certifi-
cate was filed before that date, we are of the opinion
that there was a timely filing in the present case.
Indeed, we do not understand that you have raised any
question of the validity of the certificate on the
ground that it was filed too late or on the ground
that it was not filed with the proper authority. Your
question relates only to the legality of making nomi-
nations at a meeting which had been recessed to a date
later than August 2.

The certificate filed with the county clerk
recites that the convention was held on August 2. You
do not state through what source the county clerk has

knowledge of the alleged facts with regard to the recessed sessions and the date on which nominations were actually made, but obviously this information is from some source extraneous to the certificate itself. Therefore, the question is presented as to whether the county clerk may resort to extraneous sources to determine whether the certified nominations have been lawfully made, for the purpose of deciding whether the names of the certified candidates should be placed on the general election ballot.

Section 57 of the Election Code provides in part as follows:

" . . . No name shall appear on the official ballot except that of a candidate who was actually nominated (either as a party nominee or as a nonpartisan or independent candidate) in accordance with the provisions of this Code. . . ."

In Pulliam v. Trawalter, 120 S.W.2d 108 (Tex. Civ.App. 1938), the court held that where a political party coming within the provisions of Sections 222 to 225 of the Election Code did not select party nominees in compliance with those sections, the names of the nominees could not be placed on the ballot. In that case an opposing candidate filed a suit to restrain the placing of the name of the Republican nominee on the ballot, and the court decided from the evidence adduced at the trial that the nomination had not been lawfully made and certified.

It is clear, then, that if the nominations in the present case were not made in compliance with Section 224 the nominees do not have the right to have their names placed on the ballot. But does the county clerk have the authority to decide an issue of illegality or irregularity in the nominations which is not raised on the face of the certificate? In other words, is the prohibition to be enforced through the officials charged with the duty of making up the ballot, or must it be enforced solely through the courts?

It might be plausibly argued that the officials with whom certificates of nomination are filed should have the authority to enforce this prohibition because the time between the date on which the certificate was filed and the date for making up the ballot

might be so short that a court action could not be prosecuted to final decision. However, this is an argument for saying that the power should exist rather than for saying that it actually does exist. Moreover, if the election officials are allowed to exercise the judicial function of passing on the legality of the nomination, certainly there should exist a right of appeal to the courts to review their action; and an insufficient time for prosecuting the appeal would produce similar argument against the grant of such authority.

It is generally held that, in the absence of a statute expressly conferring greater authority, the acts of elections officials in receiving certificates of nomination and in making up the ballot are purely ministerial. The extent of their authority is summarized in 29 C.J.S., Elections, § 147, as follows:

"Usually the officers or boards with whom declarations of candidacy, nomination certificates, petitions, or other nomination papers are required to be filed are authorized, as part of their ministerial duties, to pass on the form and sufficiency of the nomination papers as manifest from the papers themselves, but they have no authority to exercise judicial functions and decide controversies in regard to the regularity of the nomination nor determine other objections which go beyond the prima facie validity of the nomination papers, such as questions as to the qualifications of the signers of petitions or certificates, or the eligibility or qualification of candidates, although as part of its ministerial duty a board may examine the registration records to determine whether the signers are registered. Under some statutes the filing official or other specified officials or boards are vested with certain judicial functions and accordingly they may determine on extrinsic evidence objections to nominations to acts and proceedings connected therewith, and to other matters pertaining to the conduct of an election, but only those protests or objections within the scope contemplated by the statute may be determined. . . ."

In 29 C.J.S., Elections, § 156, it is stated:

" . . . In some jurisdictions a statutory duty is imposed upon officers with whom certificates of nomination are filed to certify to the officers charged with preparation and printing the ballots the arrangement and contents of the ballots. Such duty, where the certificates of nomination are valid on their face, is ministerial, and the officers charged with the duty cannot justify a refusal to certify the nominations by setting up facts showing that they were not in fact properly made. . . ."

And 29 C.J.S., Elections, § 162, says:

"Inasmuch as a certificate of nomination, valid on its face, when filed with the proper officer is prima facie evidence of the facts which it recites, stated supra § 135, and since statutory provisions as to the preparation and distribution of the ballots must be strictly followed, as pointed out supra § 155, and the officer whose duty it is to prepare and have printed the official ballot acts in a purely ministerial capacity, stated supra § 155, he must place on the ballot all names regularly certified to him as having been nominated, unless the refusal to do so is in obedience to a judgment of a court in a contest proceeding by a candidate opposing the person shown to have been nominated on the face of the returns, changing the result or declaring the certificate, if issued, void, or nullifying the nomination; but the officer must not proceed blindly but should satisfy himself as to the authority of the person certifying the nomination and the regularity or legality of the nominations. . . ."[1]

In State ex rel. Plain v. Falley, 8 N.D. 90, 76 N.W. 996 (1898), the secretary of state had refused to certify to the county authorities for printing on the official ballot the names of candidates which had

---

[1] The authority cited for the last quoted statement is Couch v. Hill, 10 S.W.2d 170 (Tex. Civ.App. 1928, error dism.). This case is discussed at page 10, infra.

been certified to him as nominees selected at a party convention. Among other things, the secretary of state contended that the convention had not been legally constituted. The court held that the secretary of state could not refuse to certify the names where the certificate of nomination was regular on its face, saying:

"Relators contend that . . . the duties of the secretary of state, in certifying nominations to county auditors, are ministerial purely; and that, if the certificates filed with him are fair on their face, he is without authority to look beyond or outside of the certificates. In this we think relators are clearly right, and a few observations touching the statutes and their construction will disclose our reasons for thus holding. We remark, first, that, if the secretary be clothed with judicial functions to pass upon the legality of all nominations the certificates of which are filed with him, his determinations would be final, as certainly no provisions for appeal or review can be found in the statute, and the decisions of a special tribunal charged with the duty of deciding a special matter are always final, unless the right of appeal be expressly given. . . . Further, if the secretary be clothed with judicial functions in this matter, then the political policy of the state may often turn upon his decision. The power is great, and its exercise by an officer universally recognized as political in character would be dangerous, however able and however honest the incumbent might be. For these reasons we should expect to find the power, if conferred at all, conferred in no uncertain terms. And yet confessedly there is no express judicial authority conferred upon the secretary by the statute. At most, it is an implied authority, and, if implied, the means and instrumentalities for its proper exercise are entirely wanting. He can conduct no formal judicial inquiry. He cannot coerce the production of persons or papers. He cannot enforce testimony under the sanction of an oath. His most earnest effort would with equal facility elucidate or suppress the truth. To imply authority

under such conditions, the implication
must be practically impossible of evasion.
But so far is our statute from giving such
implied authority that, in our view, it ex-
pressly withholds such authority. . . ."

The court held that the secretary of state could be en-
joined from certifying the nominations if they had not
been legally made, but went on to say:

" . . . But, if no such restraining
order be served, it is the duty of the sec-
retary to certify all nominations proper
certificates of which have been filed in
his office.  The law does not allow him to
concern himself whether such nominations
were or were not properly made, and when he,
of his own volition, refuses to certify such
nominations, and parties in interest bring
proceedings to enforce the performance of
such duty, it is no answer upon his part to
say that facts exist which would have en-
abled the proper party, at the proper time
and in the proper manner, to procure an or-
der restraining him from certifying such
nominations.  No such order having been in
fact obtained, the existence of the facts
did not release his duty."

In State ex rel. Cooper v. Blaisdell, 17 N.D.
575, 118 N.W. 225 (1908), the same court held that the
secretary of state could not refuse to certify the
names of candidates who had been nominated by a certi-
ficate of nomination signed by individual voters which
was regular on its face on the ground that some of the
signers had participated in the nomination of other
candidates for the same offices.  The court said:  "If
other candidates or any qualified portion of the public
desire to question the genuineness of the signatures,
or the qualifications of the signers, they have a right
to do so, and the right to test the legality of nomina-
tions devolves upon them, and not upon the Secretary of
State."

In State ex rel. Ranney v. Corey, 47 N.E.2d
799 (Ohio App. 1940), an action was brought to restrain
the county board of elections from placing the name of
an allegedly ineligible candidate on the ballot.  The
court found that the candidate was ineligible and

granted the relief, but said:

"No power is vested in the board of elections of a county, nor in the secretary of state, to determine whether a person who files a declaration of candidacy for a primary election possesses the necessary qualifications of a candidate for such office. See, State ex rel. Hehr v. Beery et al., etc., 55 Ohio App. 243, 9 N.E.2d 699.

"And it is the duty of election officials to place the names of those whose petitions are in the prescribed form, properly attested and filed in accordance with the provisions of the statutes, upon a ballot to be used for voting at the primary election, unless prohibited by order of a court of competent jurisdiction."

State ex rel. Van Winkle v. Boyer, 127 Ore. 91, 271 Pac. 46 (1928), involved the legality of nominations made by a nominating convention. The court denied the nominees a place on the ballot on the ground that the convention had not been legally constituted, but held that until restrained by court order it was the duty of the secretary of state to certify the nominations, saying:

" . . . The secretary of state had no authority to go behind the certificate. It was his duty to file the certificate and certify the ballot as he did. The secretary of state is a ministerial officer, and his authority is limited by the prima facie evidence afforded by the certificate."

The applicability of the general statements quoted from Corpus Juris Secundum and of the authorities we have cited depends, of course, upon whether the statutes of this State do or do not confer upon the county clerk an authority in excess of determining whether the certificate is regular on its face.

The statute directly relating to the duties of the county clerk is Section 210 of the Election Code, which reads:

"Each county clerk shall post in a
conspicuous place in his office, for the
inspection of the public the names of all
candidates that have been lawfully certi-
fied to him to be printed on the official
ballot, for at least ten (10) days before
he orders the same to be printed on said
ballot; and he shall order all the names
of the candidates so certified printed on
the official ballot as otherwise provided
in this title."

The statement that the clerk shall post the
names of candidates that have been lawfully certified
and shall order the names so certified printed on the
ballot, and the provision in Section 57, quoted ear-
lier in this opinion, which prohibits the printing of
any names on the ballot except those of candidates
nominated "in accordance with the provisions of this
Code," are the only statutes which might possibly be
taken as conferring on this officer the power or im-
posing on him the duty to go behind the certificate
and ascertain facts which might render it unlawful.
We might observe here that we do not think the author-
ity of the county clerk in determining the sufficiency
of certificates for placing names on the ballot is any
greater than the authority of the Secretary of State
in determining whether nominations filed with him
should be certified to the county clerks.

An analogous situation arises under the provi-
sions of Section 6 of the Election Code, which reads:

"Neither the Secretary of State nor
any county judge of this State, nor any
other authority authorized to issue certi-
ficates, shall issue any certificates of
election or appointment to any person
elected or appointed to any office in this
State, who is not eligible to hold such
office under the Constitution of this State
and under the above Section; and the name
of no ineligible person, under the Consti-
tution and laws of this State shall be cer-
tified by any party, committee, or any au-
thority authorized to have the names of
candidates placed upon the primary ballots
at any primary election in this State;

and the name of no ineligible candidate
under the Constitution and laws of this
State shall be placed upon the ballot of
any general or special election by any
authority whose duty it is to place names
of candidates upon official ballots."

In Orth v. Benavides, 125 S.W.2d 1081 (Tex.Civ.App.
1939, error dism.), and Beeler v. Loock, 135 S.W.2d
644 (Tex.Civ.App. 1940, error dism.), it was stated
that the issuance of a certificate of election is a
ministerial act. Because of the manner in which the
question was raised in these cases, we do not think
they are necessarily conclusive against the authority
of the officer issuing the certificate to inquire
into ineligibility, but they do suggest that he has
no authority to make judicial determinations on ques-
tions of eligibility. The same rule would be appli-
cable to the placing of names of ineligible candi-
dates on the ballot. Cf. Att'y Gen. Op. O-2632
(1940).

There is language in Couch v. Hill, 10 S.W.
2d 170 (Tex.Civ.App. 1928, error dism.), which, taken
alone, would support the view that the county clerk
has the duty of determining from extraneous sources
the legality of nominations certified to him. In that
case, two groups of citizens held county conventions,
each group claiming to be the regularly and legally
organized county convention of the Republican Party.
One of the conventions nominated candidates for county
offices. Delegates of the rival convention were recog-
nized by the state convention, which certified its ac-
tion to the county clerk. Thereupon, he refused to
place the nominees of the other convention on the bal-
lot, and the nominees brought an action for a writ of
mandatory injunction against him to compel the placing
of their names on the ballot. The Court of Civil Ap-
peals, in upholding the trial court's refusal of the
writ, said:

"Here there were two separate county
conventions, held on the same day for the
same purposes, each claiming to be and rep-
resent the Republican Party in the county.
In the very nature of the transaction, one
of those conventions was regular, the other
irregular; one was the duly authorized,

constituted, organized and functioning
Republican county convention, the other
a mere mass meeting without authority to
represent or bind the Republican Party
or any of its members. The acts of one
were regular and effectual for the objects
and purposes of the meeting; the acts of
the other were futile. The transaction
constituted a dispute between two factions,
each purporting to be and represent the
regular Republican organization in that
county. It was a controversy apparently
wholly within the party. The two factions
took their dispute to the highest party
authority, presented their respective con-
tentions to that authority, produced evi-
dence in support of their claims, and in-
voked the judgment of that authority,
which determined the controversy. We hold
that that determination was final and con-
clusive upon the parties to the contest,
and that no court has any authority to go
behind the decision of the state committee
for the purpose of meddling with a contro-
versy so wholly political in its nature."[2]

It was there being held that the court itself could
not overturn a political party's settlement of an in-
ternal party controversy. The party was the tribunal
for deciding the controversy, and the county clerk
was under a duty to accept its decision. The court
also held that the petitioners were not entitled to
the extraordinary relief sought by them unless they
showed every fact necessary to entitle them to a place
on the ballot and that they had not met this burden.

These holdings were sufficient to dispose of
the case. However, the court went further to say:

"So is it contended by appellants
that the duty of the county clerk to pub-
lish appellants' names as the nominees of
the Republican Party for the offices they

---

[2] It is usually held that where the officer re-
ceives certificates of nomination from rival conven-
tions, it is his duty to determine in the first instance
which convention represents the party. 20 C.J.,Elec-
tions, § 156, note 91; 18 Am. Jur., Elections, § 137.

seek, and to print those names on the official ballot, was purely ministerial in its character; that the clerk is clothed with no discretion in the matter; and that, upon receipt of Ferguson's certificate, the duty was absolutely mandatory upon the clerk to publish appellants' names and place them on the official ballot. We overrule this contention. The clerk's duty is to publish the names in the certificate, and print them on the ballot, when those names are of 'candidates who have received the necessary votes to nominate' them (article 3129), and when those names 'have been lawfully certified to him' (article 3132). The official ballot shall contain the names of those only 'whose nominations for an elective office have been duly made and properly certified' (article 2978), and 'no name shall appear on the official ballot except that of a candidate who was actually nominated * * * in accordance with the provisions of this title' (article 2978). In view of these provisions, and as a practicable matter besides, it is clear that the county clerk must not blindly publish and print on the ballot every name certified to him as a party nominee, but must proceed cautiously, satisfying himself as to the authority of the person certifying; and, when he is made aware of facts or circumstances which cast reasonable doubt upon the authority of the one certifying, or upon the regularity or legality of the nomination of the persons whose names are certified to him, it becomes his duty to ascertain the true facts before he performs the important duty prescribed for him in such cases."

We seriously doubt that the court would have recognized any authority in the county clerk to refuse to place the names on the ballot if the state committee had not already acted. Furthermore, we doubt that any such authority would have been recognized if the alleged illegality had involved other unresolved disputed fact questions. The court did not say how the county clerk should go about ascertaining the facts or what authority he would have for compelling the production of

evidence. What means does he have for arriving at the "true facts"? Where would the line be drawn between the issues he could resolve and the issues he could not resolve? In view of the obvious obstacles to his exercising full authority to determine legality in all cases, could the court have meant to hold that he is to act in a quasi-judicial capacity at all? We are of the opinion that the case cannot be taken as holding more than this: Where the county clerk does refuse to print the name of a candidate on the ballot, a court will not compel him to do so unless the candidate shows that he has been legally nominated. The denial of relief results not from the clerk's authority to exercise quasi-judicial powers but from the lack of a remedy on the part of the candidate. This was the effect of the holding in Westerman v. Mims, 111 Tex. 29, 227 S.W. 178 (1921). And the statement in Att'y Gen. Op. O-2712 (1940) that the officer receiving the application of an independent candidate who had participated in a primary election has the "discretion" to decide whether he will accept the application actually means that he has an anomalous arbitrary power arising from the lack of a remedy to prevent its exercise rather than that he has been invested by law with a discretion in the matter.

Upon consideration of the provisions in our statutes and the authorities we have cited, it is our opinion that the county clerk does act in a ministerial capacity in receiving certificates of nomination and in placing the names of nominees on the official ballot. We think the reasoning in State ex rel. Plain v. Falley, supra, pointing out the officer's lack of means and instrumentalities for the exercise of judicial or quasi-judicial power in passing on the legality of nominations, is especially pertinent. However, we cannot agree that, under the Texas decisions, an officer who has refused to act on certifications could not interpose defenses in support of his action in a mandamus suit. Under the holdings in this State that a person seeking the extraordinary remedy of mandamus or mandatory injunction must show himself clearly entitled to the relief, it would appear that a candidate who has not been legally nominated could not maintain the action and that the facts disqualifying him from maintaining the suit could be raised by the respondent. Westerman v. Mims, supra; Couch v. Hill, supra.

## SUMMARY

The county clerk acts in a ministerial capacity in receiving certificates of nomination and in placing names of nominees on the general election ballot. Where a certificate is regular on its face, he does not have the duty or authority to determine questions of irregularity or illegality in the nomination which would depend upon an ascertainment and determination of extraneous facts.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

By *Mary K. Wall*

Mary K. Wall
Assistant

MKW:wb